JAMES D. MCNEELY & others *vs.* BOARD OF APPEAL
OF BOSTON & others

Suffolk. February 4, 1970. — July 3, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Variance, Validity, Educational institution, "Dimensional requirements." *Education. Constitutional Law,* Education, Zoning, Equal protection of laws. *Boston. Equity Pleading and Practice,* Zoning appeal.

A zoning variance granted by the board of appeal of Boston under St. 1956, c. 665, § 9, to a university which was situated in a local business district and which was in need of additional accommodations for a substantially greater number of students, to erect on a lot across a narrow lane from its existing building a five story school building not conforming to the Boston zoning code in several particulars was in excess of the board's authority and must be annulled where findings were not warranted that there were conditions especially affecting such lot which did not affect that zoning district generally [100–101]; or that enforcement of the zoning requirements would involve "substantial hardship" to the university other than financial hardship [101]; or that the variance would not derogate from the intent and purpose of the code, which in part was to protect the adjoining Historic Beacon Hill District created by St. 1955, c. 616 [101–103].

A decision by the board of appeal of Boston reciting the statutory conditions essential to the granting of a zoning variance under St. 1956, c. 665, § 9, but not making the explicit findings required as a prerequisite thereto was invalid on its face. [103]

The general statement of principles and purposes set forth in Part II, c. 5, § 2, of the Massachusetts Constitution did not provide a premise for resolution of the question whether the Boston zoning code as applied to prohibit an educational institution from erecting a certain school building was constitutional. [103–104]

Absence from the zoning enabling act of Boston, St. 1956, c. 665, and from amendments thereto, of the proviso of the general zoning enabling act, G. L. c. 40A, § 2, applicable to any city, except Boston, and any town, that no zoning ordinance or by-law "which prohibits or limits the use of land . . . for any educational purpose . . . shall be valid" did not deny equal protection of the laws to an educational institution in Boston which was prohibited by the Boston zoning code from erecting a certain school building. [105, 107]

In a suit in equity by way of appeal to the Superior Court from a zoning decision of the board of appeal of Boston, an interlocutory decree respecting the bond to be filed by the plaintiffs pursuant to St. 1956, c. 665, § 11, complied with by them before entry of the final decree and not appealed, did not affect the final decree and was not open to review upon appeal from the final decree. [109]

Where it appeared, in a suit in equity by way of appeal to the Superior Court from a decision of the board of appeal of Boston granting a variance, that the plaintiffs had filed the bond required by St. 1956, c. 665, § 11, pursuant to an interlocutory decree, that the final decree sustained the board's decision, and that the plaintiffs appealed from the final decree, it was held that a judge of the Superior Court then rightly "denied as a matter of law and not of discretion" a motion by the applicant for the variance that the interlocutory decree be amended by requiring the plaintiffs to post an additional bond to indemnify the applicant for damages suffered by delay if the final decree should be affirmed. [110]

. BILL IN EQUITY filed in the Superior Court on January 18, 1968.

The suit was heard on the merits by *Smith*, J. The motion described in the opinion was heard by *Ford*, J.

*Gael Mahony* (*Richard W. Renehan* with him) for the plaintiffs.

*Thomas J. Carens* (*Burton Peltz* with him) for Suffolk University.

BY THE COURT. There are two appeals before us in this litigation. One is an appeal by the plaintiffs from a final decree in the Superior Court stating that the board of appeal

of Boston (the board) did not exceed its authority in granting a variance to Suffolk University (Suffolk) from several provisions of the Boston Zoning Code (the code). The other appeal is by Suffolk from an order denying as matter of law Suffolk's motion made after the entry of the final decree that the plaintiffs' bond, required by St. 1956, c. 665, § 11, be increased. We defer discussion of the second appeal until we have disposed of the first.

Many facts are not controverted. Suffolk was founded in 1906 exclusively as a law school. It gradually grew. Suffolk was incorporated as a university with power to grant degrees, including graduate degrees in several fields of study. St. 1914, c. 145. St. 1935, c. 15. St. 1937, c. 237. From the beginning Suffolk has been located on the north slope of Beacon Hill. Its present location is at the corner of Temple and Derne streets. The Derne Street aspect of the present building (to which a large brick addition was made in 1965) faces the north side of the yellow brick and marble annex to the State House. The east side of the present building is on Temple Street. The west side abuts on Ridgeway Lane, which is a narrow way probably dating back to colonial days. Ridgeway Lane barely permits the one way passage of a vehicle of average size.

Because of the increase in enrollment, the consequent need for more space, and the availability of a nearby parcel of land (the locus) recently occupied by a supermarket, Suffolk and the owners of the locus, Cedar Realty Trust (the trust), in 1967 entered into a purchase and sale agreement contingent upon the granting of a variance which would permit Suffolk to construct a school building according to a plan submitted to the building commissioner. The commissioner denied the application for a permit on the grounds that the proposed building would violate the code in several stated particulars which will later be mentioned. A portion of the city zoning map, showing the general area with which we are concerned, is reproduced with this opinion.

Suffolk and the trust appealed to the board under St. 1956, c. 665, § 9, which in its essentials corresponds to G. L.

McNeely *v.* Board of Appeal of Boston.

c. 40A, § 15.[1]  While the appeal was pending Suffolk filed a letter with the board stating that it was willing to limit the height of the proposed building to five stories with a basement and subbasement rather than, as originally proposed, a partly six and partly seven story building above ground.

After a hearing the board granted the variance in the several particulars requested subject to the proviso "[t]hat the proposed building be no more than five stories in height, with a basement and a sub-basement."

The plaintiffs as parties aggrieved by the decision of the board have appealed under the provisions of St. 1956, c. 665, § 11.  The plaintiffs fall into two groups: a group of individuals who are owners and occupants of premises on Temple and Hancock streets and Ridgeway Lane, and a group who constitute the Hancock Historical Trust, owners of several properties on Hancock Street.

The locus is situated on the south side of Cambridge Street, number 150, between Hancock Street and Ridgeway Lane.  It is almost directly across from the Harrison Gray Otis House and The Old West Church on the north side of Cambridge Street.  It consists of approximately 8,400 square feet, is nearly rectangular in shape and is entirely occupied by a one story building used for several years as a grocery store.  Suffolk plans to demolish the existing building and to erect a new building of Type I construction which will occupy the entire lot and will be five stories high, each floor to have the same area as the lot.

The locus is in an L–2 zoning district.  This means a local business district permitting a floor area ratio of two, that is, the floor space of a building to be constructed in the district

---

[1] Statute 1956, c. 665, § 9, in pertinent part provides: "said board of appeal may authorize with respect to a particular parcel of land or to an existing building thereon a variance from the terms of such zoning regulation where, owing to conditions especially affecting such parcel or such building, but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of such zoning regulation would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulation, but not otherwise."

shall not exceed twice the size of the lot. Other require-
ments of this zoning classification as applied to the proposed
building are fifty-nine off street parking spaces, an off street
loading bay, a front yard twenty feet in depth on Hancock

Street, a backyard (where the locus abuts the property of one of the plaintiffs) thirty feet in depth, and a parapet setback on the fifth floor of the Ridgeway Lane side of the building.

No one of these several requirements will be met by the proposed building. The floor area ratio instead of two will be less than 6.3 (which would have been the floor area ratio of the part six and part seven stories originally proposed). There will be no off street parking spaces, no loading bay, no front yard or backyard and no parapet. The board "granted relief" as to each section of the code which imposed the specific requirement. It set forth no reason for granting a variance as to any one of the requirements except the one relating to the off street loading bay. In that connection the board wrote, "after the original deliveries of school furniture, etc., there will be very little delivery and receiving of materials made, and it will consist mostly of small items, such as school supplies, books, papers, etc."

The board made the following general findings: "the lot is abutted on three sides by streets; the fourth side is under private ownership, and it is not possible to obtain additional land in order to comply with the above mentioned requirements of the Zoning Code. . . . [F]or the reasons aforesaid that the exceptional circumstances peculiar to this specific case justify a relaxation of the restrictions imposed by the statute, and that the varying of the terms of the Zoning Act as outlined above will not conflict with the intent and spirit of said Zoning Act provided the following proviso is carried out. Having in mind the foregoing findings of fact, the Board is of the opinion that this is a specific case where a literal enforcement of the Act involves a substantial hardship upon the appellant as well as upon the premises, and where desirable relief may be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of the Zoning Act."

The plaintiffs appealed from the decision of the board to

the Superior Court under St. 1956, c. 665, § 11, which in its main features corresponds to G. L. c. 40A, § 21. In addition to the facts heretofore stated, the judge found that Suffolk has "an impelling need for this proposed new structure. . . . If Suffolk were not granted a variance, it could still build a two and one-half story classroom building within the requirement of the Zoning Code, but such building would accommodate approximately only 150 students, while a building erected in accordance with the variance granted would accommodate approximately 550 students. With the erection of a two and one-half story building at 150 Cambridge Street, such building would be impracticable. The variance granted by the . . . [board] is the minimum variance required to allow Suffolk a reasonable use of the land. . . . A denial of a permit would work a substantial hardship on Suffolk by imposing a limitation on its corporate purpose to furnish educational facilities and instruction to qualified students and the general public."

The judge found that there were no height limitations within an L–2 district and no restrictions on the use of property for educational purposes. He concluded that "there is no detriment to the public good by granting relief" and "no substantial derogation of the intent and purpose of the Zoning Law." He entered the decree from which the instant appeal is taken.

1. Suffolk's main contention is that on constitutional grounds the zoning restrictions of the code do not apply to its proposed building. We defer consideration of that contention, which is urged most strongly upon us, pending discussion whether, independent of the contention, there were grounds for granting the variance.

2. The plaintiffs, citing numerous cases, argue that none of the several requisites essential to the granting of a variance has been shown to exist. There is merit to their contention. Specifically the judge did not find and the evidence would not support a finding that there are conditions especially affecting the land or the existing building which do not affect the zoning district generally. In truth the con-

ditions affecting the land and the existing building are typical of rather than distinguishable from the conditions affecting other parcels and buildings in the same zoning district on the south side of Cambridge Street. The special consideration which Suffolk seeks does not arise from any conditions especially affecting the land or existing building, but arises from the desire of Suffolk to construct a new building, not conformable to zoning requirements but conformable to a plan which will provide the accommodations for a substantially greater number of students at a substantially lower cost per floor area unit. *Abbott* v. *Appleton Nursing Home, Inc.* 355 Mass. 217, 220–221. Similarly, the "impelling need" does not spring from conditions at the locus, but from the overcrowded conditions at the present location of the school. *Sullivan* v. *Board of Appeals of Belmont*, 346 Mass. 81. See *Brackett* v. *Board of Appeal of the Bldg. Dept. of Boston*, 311 Mass. 52, 59–60; *Hurley* v. *Kolligian*, 333 Mass. 170, 173; *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 338 Mass. 160, 165–166.

3. The plaintiffs also argue that there is no evidence of "substantial hardship," the term used in St. 1956, c. 665, § 9, which we have held must mean something more than financial hardship.[2] The only hardship asserted and found is financial hardship, the difference between the unit cost per student for constructing a conforming building and the unit cost per student of constructing a building under the variance. Financial hardship to the owner alone is not sufficient to establish "substantial hardship" and thereby justify a variance. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 438. *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676, 681. *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, 450.

4. The evidence does not support the judge's general find-

---

[2] By St. 1958, c. 381, G. L. c. 40A, § 15, cl. 3, was amended to read "substantial hardship, financial or otherwise." Statute 1956, c. 665, § 9, was not similarly amended.

ing that the variance will not derogate from the intent and purpose of the zoning ordinance. The plaintiffs persuasively and effectively argue from the evidence and statutory history that one of the purposes of the zoning classification (L–2) of the strip along the south side of Cambridge Street in December, 1964, was related to the preservation and enhancement of the adjoining historic district. The evidence shows that by a succession of legislative acts, the Historic Beacon Hill District, originally created by St. 1955, c. 616, and extended by St. 1958, cc. 314, 315, St. 1963, c. 622, and St. 1965, c. 429, now includes the entire north slope of Beacon Hill from West Cedar Street on the west to Bowdoin Street on the east. The historic district is classified as an H–2–65 zone, which excludes the use of property for business purposes and allows residential property with a floor ratio of two and a height limit of sixty-five feet. The legislative purpose stated in St. 1955, c. 616, § 2, is, "The purpose of this act is to promote the educational, cultural, economic and general welfare of the public through the preservation of the historic Beacon Hill district, and to maintain said district as a landmark in the history of architecture and as a tangible reminder of old Boston as it existed in the early days of the commonwealth."

All of the land in the strip abutting the south side of Cambridge Street between West Cedar and Bowdoin streets has been classified since 1964 within the L–2 district, with the limitations earlier mentioned. Prior to 1964 the strip had been classified as B–80 which permitted general business use and a building height limit of eighty feet. When the redistricting took place in 1964 most of the businesses on the south side of Cambridge Street were local businesses, and since 1964 all new construction in that area has conformed to the L–2 district restrictions, except the fire station which was built about the time the change of the district to L–2 took place. Thus the classification of the Cambridge Street strip as L–2, apart from considerations of safety and health, appears to be in furtherance of the declared legislative purpose in St. 1955, c. 616, by providing a peripheral area for

local business to serve the needs of the residents in the densely settled historic district to the south and to prevent the construction of buildings which would wall it in and thereby detract from, rather than "preserve and increase," the "amenities" of the city. St. 1956, c. 665, § 2.

For the reasons stated we are of opinion that the record does not support the finding that the granting of the variance will not derogate from the intent and purpose of the zoning ordinance. *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676. *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 338 Mass. 160.

5. We agree with the plaintiffs' contention that the decision of the board is invalid on its face. The board did not make the explicit findings which are prerequisite to the granting of a variance and which, as we have often said, are not supplied by a bare recital of the statutory conditions essential to the granting of a variance. *Barnhart* v. *Board of Appeals of Scituate*, 343 Mass. 455, 457–458, and cases cited. These principles apply to decisions of the Boston board of appeal. *Brackett* v. *Board of Appeal of Boston*, 311 Mass. 52, 54–55. *Real Properties, Inc.* v. *Board of Appeal of Boston*, 319 Mass. 180, 183. The deficiencies in the board's decision would have justified the judge in annulling the decision but for the underlying constitutional issue raised by Suffolk in its pleadings. To this issue we now turn.

6. Suffolk maintains that as an educational institution it is "exempt from the operation of the . . . Boston Zoning Code because of Part II, Chapter V, Section 2 of the Massachusetts Constitution and the Fourteenth Amendment of the Federal Constitution" and because "the code restrictions bear no reasonable relation to the purposes for which zoning regulations may be adopted, one of them being 'the adequate provision of schools.'" Suffolk argues that the Boston code effectively prevents it, an educational institution, from making economical and practical use of its land for educational purposes, a result which, it is argued, requires us to hold the code invalid as applied to Suffolk in contravention of the language of Part II, c. 5, § 2, of the

Constitution of the Commonwealth.[3]　The argument attributes to the quoted section a compelling force never given to it before.　In fact, despite the general exhortation in § 2, legislative power to impose permanent restrictions on land use by an educational institution was specifically recognized by this court, speaking through Sheldon, J. in *Massachusetts Inst. of Technology* v. *Boston Soc. of Natural History*, 218 Mass. 189, 191–192.　The section of the constitution has been referred to in our opinions as an expression of a fundamental State policy in support of legislative action taken in some fields.　See *Commonwealth* v. *Interstate Consol. St. Ry.* 187 Mass. 436, 439; *Nicholls* v. *Mayor & Sch. Comm. of Lynn*, 297 Mass. 65, 68.　The section, couched in broad inspirational terms, is an exhortation from the founding fathers to their successors.　It sets out the goals of the social order and suggests the means by which they might best be attained. · So far as we are aware, however, the section has never been cited as a constitutional command forbidding or requiring specific legislative action.　We do not regard the general statement of principles and purposes set out in Part II, c. 5, § 2, as providing a premise for the resolution of the case before us on constitutional grounds.

Article 60 of the Amendments, adopted and ratified by the people on November 5, 1918, following the Constitutional Convention of 1917–1918 provides simply, "The general court shall have power to limit buildings according to their use or construction to specified districts of cities and

---

[3] "Wisdom and knowledge, as well as virtue, diffused generally among the body of the people, being necessary for the preservation of their rights and liberties; and as these depend on spreading the opportunities and advantages of education in the various parts of the country, and among the different orders of the people, it shall be the duty of Legislatures and Magistrates, in all future periods of this Commonwealth to cherish the interests of literature and the sciences, and all seminaries of them; especially the university at Cambridge, public schools and grammar schools in the towns; to encourage private societies and public institutions, rewards and immunities, for the promotion of agriculture, arts, sciences, commerce, trades, manufactures, and a natural history of the country; to countenance and inculcate the principles of humanity and general benevolence, public and private charity, industry and frugality, honesty and punctuality in their dealings; sincerity, good humour, and all social affections, and generous sentiments among the people."

towns." No exception is made in art. 60 for educational institutions.[4]

In 1954 the general "Zoning Enabling Act" (G. L. c. 40A, added by St. 1954, c. 368, § 2) applicable to "any city, except Boston, and any town" became law. In 1956 the Boston zoning enabling act became law. (St. 1956, c. 665.) Section 2 of each act contained the same grant of authority. In all pertinent respects with one exception the same language was used. The exception was that in the general enabling act but not in the Boston act there was the "proviso" declaring invalid prohibitions or limitations on the use of land for certain educational purposes. As subsequently amended by St. 1956, c. 586, and St. 1957, c. 145, and so far as relevant to our present discussion the general enabling act, G. L. c. 40A, § 2, now reads, "any city, except Boston, and any town, may by a zoning ordinance or by-law regulate and restrict the height, number of stories, and size of buildings . . . provided, however, that no ordinance or by-law which prohibits or limits the use of land . . . for any educational purpose . . . shall be valid." Although the Boston enabling act has been frequently amended,[5] the proviso quoted from G. L. c. 40A, § 2, has never been incorporated in it. Suffolk contends that the absence of the proviso from the Boston enabling act denies it the equal protection of the laws.

This contention was dealt with in a cognate context not too long ago. In 1960 legislation relating to urban renewal projects outside Boston placed them under a different authority from those within Boston and the Boston authority was granted greater latitude in dealing with deviations from police power measures than was the authority for other municipalities. In advising that there was no denial of equal protection of the laws to persons in the other mu-

---

[4] This amendment "authorizing building zones in cities and towns does not apply to vacant lands," but the uses of vacant lands may be reasonably regulated "for the promotion of the public health, safety, morals or welfare." *Burlington* v. *Dunn*, 318 Mass. 216, 220, cert. den. sub nom. *Dunn* v. *Burlington*, 326 U. S. 739.

[5] St. 1957, c. 408. St. 1958, c. 77. St. 1964, c. 244. St. 1966, c. 193.

nicipalities, it was said in *Opinion of the Justices*, 341 Mass. 760, 782: "Boston has frequently been the object of special legislative attention. It has been excluded from the operation of various general laws, and the same subject matter has been covered by special legislative provisions applicable only in Boston, enacted presumably with a view to meeting special conditions there and dealing more appropriately with its special requirements. . . . The Legislature may reasonably conclude that the largest city in the Commonwealth, in the heart of a great metropolitan area, may be subject to problems and conditions not found in comparable degree in other communities. . . . In the absence of some specific showing that there is no reasonable basis for the proposed separate classification and different treatment of Boston projects, or that in some manner it operates unequally in respect of those to whom it is applicable, we perceive nothing in the proposed procedural provisions governing Boston projects as compared to those governing projects elsewhere which denies to any person the equal protection of the laws."

Again, in answering the same contention made in connection with a requirement under St. 1956, c. 665, § 11, for the posting of a bond by a party appealing from the granting of a variance by the Boston board of appeal (a requirement not made in G. L. c. 40A), this court said in *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458, 460: "The Legislature could reasonably determine that, since the population of Boston is far greater than that of any other city or town in Massachusetts, the number of frivolous or vexatious appeals from the board of appeal of Boston would be considerably higher than the number of such appeals . . . in other cities and towns. The Legislature could therefore conclude that the bond requirement in question would tend to eliminate such appeals to the Superior Court in Suffolk County, and that such a bond requirement would be unnecessary in connection with zoning appeals to the Superior Court elsewhere. In this respect, the statutory distinction between Boston and other cities and towns is not 'purely arbitrary,' and does not create an 'invidious discrimination.'"

Other cases in which we have upheld the Legislature's distinctions in laws governing different areas or entities in the Commonwealth and not denying equal protection of the law to citizens are *Brest* v. *Commissioner of Ins.* 270 Mass. 7, *Goodale* v. *County Commrs. of Worcester,* 277 Mass. 144, *Doherty* v. *Commissioner of Ins.* 328 Mass. 161, and *Thompson* v. *Chelsea, ante,* 1.

Similar recognition has been given by the Supreme Court of the United States to statutory distinctions based on density of population. *Hayes* v. *Missouri,* 120 U. S. 68. *Metropolitan Cas. Ins. Co.* v. *Brownell,* 294 U. S. 580.

It seems to us that the omission of the proviso from the Boston zoning enabling act is not an invidious discrimination against educational institutions within the city but rather is a delegation of reasonable control of all land use to the authorities of the capital city where the concentration of the population is most dense, where land use is most intense, and where educational, religious and other institutional use of land is and historically has been greatest.

Apart from the legal fact that the proviso of the general zoning enabling act (G. L. c. 40A, § 2) is not incorporated in the Boston zoning enabling act, there is the further fact, found by the judge, that "Zoning limitations in an L–2 district . . . [do] not impose any restrictions on the use of property for educational purposes." The judge also found, "If Suffolk were not granted a variance, it could still build a two and one-half story classroom building within the requirement of the Zoning Code," but such a building in light of Suffolk's need would be impracticable. These findings, it seems to us, effectively refute Suffolk's attempt to draw an analogy between the present case and the situation before the court in *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, where the proviso of G. L. c. 40A, § 2, applied. In the *Holy Cross* case, it was held that Brookline's attempt to impose upon a multipurpose college building, to be erected on a lot conforming to zoning requirements, the same dimensional floor requirements as were applicable to detached single family dwellings so limited the use of the

lot as to be a virtual nullification of the proviso in G. L. c. 40A, § 2, exempting educational institutions and, therefore, invalid.   347 Mass. 486, 492–494.   See *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 618.

In the case before us the Boston zoning code violates no statutory restraint.   Nor, in our judgment, does it offend any constitutional principle.   It requires no more than that an educational institution as a prospective purchaser of land in a local business district, on which stands a one story structure which it intends to demolish and replace with a building for educational purposes, must generally adhere to the restrictions uniformly applied to all other lands in the district abutting upon an "historic . . . district" legislatively set apart for preservation for the "educational, cultural . . . and general welfare of the public."

A footnote in Suffolk's brief "concedes that it must adhere to the [off street] parking requirement, § 23–3 [of the code], and is willing to do so."   This concession, it seems to us, reveals the latent infirmity of Suffolk's contention that it is constitutionally exempt from zoning requirements.   Our holding in *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 618, although it dealt primarily with statutory restraints (G. L. c. 40A, § 2), implicitly recognized the constitutional validity of certain zoning requirements in the use of land by educational institutions under the police power.   Suffolk's suggestion of an accommodation on the parking requirement takes us outside the record and we do not comment on it.

### THE BOND.

7. The other appeal in the case is by Suffolk.   It is founded upon the statutory requirement (St. 1956, c. 665, § 11) that an aggrieved person who appeals from a decision of the board of appeal of Boston must file a bond.   The statute, in pertinent part, reads: "Any person aggrieved by a decision of said board of appeal . . . may appeal to the superior court sitting in equity for the county of Suffolk . . . . Every person so appealing shall file a bond with sufficient surety,

to be approved by the court, for such a sum as shall be fixed by the court, to indemnify and save harmless the person or persons in whose favor the decision was rendered from all damages and costs which he or they may sustain in case the decision of said board is affirmed. . . . The foregoing remedy shall be exclusive; but the parties shall have all rights of appeal and exception as in other equity cases." The requirement of a bond is limited to appeals from decisions of the Boston board. The statute was discussed and its constitutionality upheld in *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458.

The record shows that the plaintiffs filed their appeal in the Superior Court on January 18, 1968. On January 25, 1968, they moved that the court set the amount of the bond as required by St. 1956, c. 665, § 11. A hearing was held, evidence was received and on June 11, 1968, an interlocutory decree was entered fixing the amount of the bond at $25,000. On June 28, 1968, the bond in the prescribed sum was approved and filed. No appeal was taken.

The final decree on the merits was entered on March 28, 1969. The plaintiffs filed their appeal therefrom on April 1, 1969. Suffolk filed on April 3, 1969, a motion that the interlocutory decree of June 11, 1968, be amended by requiring the plaintiffs to post an additional bond to indemnify Suffolk for damages suffered by reason of further delay if the decision of the court is affirmed. After hearing and rehearing, the motion was "denied as a matter of law and not of discretion." From this order Suffolk has appealed.

The interlocutory decree fixing the amount of the bond and ordering that it be posted by a date certain is not now open to review. Suffolk did not appeal from the decree. The plaintiffs complied with it. The saving provision of G. L. (Ter. Ed.) c. 214, § 27,[6] does not apply. The interlocutory decree did not affect, erroneously or otherwise, the final decree from which Suffolk did not appeal.

---

[6] "Interlocutory decrees not appealed from shall be open to revision upon appeals from final decrees, so far only as it appears to the full court that such final decrees are erroneously affected thereby."

8. We consider Suffolk's appeal from the judge's order, made after final decree, denying as matter of law Suffolk's motion to increase the amount of the bond under St. 1956, c. 665, § 11. Suffolk maintains that if the denial of the motion was error, the substantive issues of the plaintiffs' appeal to this court have become moot, since the plaintiffs have no right to prosecute the appeal. We are not persuaded by the argument. The statute relates solely to appeals from decisions of the board of appeal of Boston and directs that the appeal be "to the Superior Court sitting in equity for the county of Suffolk." The legislative purpose, among others, was to discourage frivolous and vexatious appeals from the decisions of the Boston board, a condition which might not be found in comparable degree in other counties. *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458. We think that the legislative purpose is fully achieved when there has been a judicial determination of the case in the form of a final decree in the Superior Court. Upon that event the case assumes the same posture as any other case in equity and should be subject to the same remedies available in the regular course of equity proceedings to preserve the status quo upon conditions. G. L. c. 214, §§ 19, 21, 22. Indeed the paragraph of St. 1956, c. 665, § 11, which defines the bond requirement, concludes, "the parties shall have all rights of appeal and exception as in other equity cases." Cf. c. 40A, § 21. In short, apart from whatever legal force and effect the bond posted pursuant to the interlocutory decree may have, the judge, after the entry of the final decree, was without power to act under St. 1956, c. 665, § 11, on Suffolk's motion. His order was therefore right.

9. The final decree is reversed. A decree is to enter that the decision of the board of appeal was in excess of its authority and is annulled.

10. The order denying the motion to amend the amount of the bond posted under St. 1956, c. 665, § 11, is affirmed.

*So ordered.*