CHARLES BRODERICK & others *vs.* BOARD OF APPEAL OF BOSTON & others.

Suffolk.     February 10, 1972. — March 23, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, & BRAUCHER, JJ.

*Equity Pleading and Practice*, Bond, Zoning appeal.  *Zoning*, Variance, Hospital.

In a suit in equity by way of appeal to the Superior Court from a zoning decision of the board of appeal of Boston, an interlocutory order, made after the judge had held a full hearing on the merits, which required the plaintiffs to replace their $5,000 bond, filed and approved before the hearing on the merits, with a $100,000 bond as a condition of entry of a final decree on the merits and dismissal of the bill following their refusal to file the increased bond were errors of law because the purpose of the bond requirement of discouraging frivolous appeals from the decisions of the board had been accomplished by the plaintiffs' filing of the $5,000 bond prior to the full hearing on the merits.  [474–476]

Zoning variances granted by the board of appeal of Boston to a hospital corporation for the construction of a new modern hospital and a parking garage to replace an existing nonprofit community hospital on a large parcel of land in a residential district were within the board's discretion and must be upheld on appeal to the courts where the evidence warranted findings that by reason of physical conditions affecting the parcel which did not affect that zoning district generally use of the parcel for residential purposes would be economically unfeasible, that refusal to grant the requested variances would result in the extinction of the existing hospital because of its functional obsolescence, that the new hospital would not result in substantial detriment to the public good or derogate from the intent or purpose of the Boston zoning code, but on the contrary would improve the use of the parcel in relation to the neighborhood and permit continuance of essential health services to the community.  [477–479]

BILLS IN EQUITY filed in the Superior Court on December 8, 1970.

The suits were heard by *Kalus*, J.

*Jerome M. Leonard* for the plaintiffs.

*William D. Quigley* (*Jacob I. Brier* with him) for Faulkner Hospital Corporation.

TAURO, C.J.   The plaintiffs appeal from a final decree dismissing their bills seeking annulment under St. 1956, c. 665, § 11,[1] of two decisions of the Boston board of appeal (board) granting certain variances from the city's zoning code to the Faulkner Hospital Corporation (the Faulkner) for the construction of a new hospital and a parking garage on a large parcel of land in a residential district in which the plaintiffs reside.   After a hearing on the merits, the bills were dismissed for failure to file a bond in the amount of $100,000 as ordered by the trial judge.

A summary of the prior proceedings is as follows: The Faulkner on October 19, 1970, sought from the board variances to permit the erection of an eight story hospital, including doctors' offices and a five story garage accessory to the hospital in an S–3 (single family) residential district.   The new hospital would replace existing hospital structures which would be demolished.   On November 17, 1970, the board granted all required variances in two separate decisions.   On December 8, 1970, the

---

[1] Statute 1956, c. 665, § 11, reads (in part): "Any person aggrieved by a decision of said board of appeal . . . may appeal to the superior court sitting in equity for the county of Suffolk . . . within fifteen days after such decision is recorded.   Every person so appealing *shall file a bond with sufficient surety,* to be approved *by the court, for such a sum· as shall be fixed by the court, to indemnify and save harmless* the person or persons in whose favor the decision was rendered from all damages and costs which he or they may sustain in case the decision . . . is affirmed. . . .   The foregoing remedy shall be exclusive; but the parties shall have all rights of appeal and exception as in other equity cases" (emphasis supplied).   The constitutionality has been upheld against separate attacks in *Begley* v. *Board of Appeal of Boston,* 349 Mass. 458 (decided under predecessor statute), and *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55.

plaintiffs filed the bills of complaint pursuant to St. 1956, c. 665, § 11, and on December 18, 1970, a bond of $1,000,000, was ordered thereunder. The order was amended to $50,000 on December 21, 1970, and a bond in such amount was filed and approved on February 2, 1971. On April 29, 1971, after our decision in *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, the bond was reduced to $5,000, and on June 7, 1971, a bond in such amount was filed and approved. Later in June, there was a full hearing on the merits. The judge ordered the suits to be fused. On July 1, 1971, the judge's "Findings, Rulings and Order for Decree" was entered. Contained therein was an interlocutory order requiring that the plaintiffs replace the $5,000 bond, previously filed, with a $100,000 bond within ten days. If the requirement was met, then a final decree was to be entered sustaining the decisions of the board; otherwise, the plaintiffs' bills of complaint were to be dismissed. The required bond was not filed, and a final decree dismissing the plaintiffs' bills was entered on July 26, 1971. The plaintiffs appealed. G. L. c. 214, § 19.

1. The plaintiffs contend principally on the basis of *Damaskos* v. *Board of Appeal of Boston, supra,* that the judge erred in ordering them to post a bond in the sum of $100,000 as a prerequisite to the entry of a final decree on the merits. The plaintiffs seek reversal of the final decree and a remand of the case to the Superior Court with directions for the entry of a new final decree declaring that the board exceeded its authority, and annulling its decisions with respect to the hospital and garage.

Where there had been a full hearing on the plaintiffs' bills of complaint, we do not believe that the interlocutory order conditioning the entry of a final decree on the merits upon the posting of additional surety was correctly included in the judge's "Findings, Rulings and Order for Decree." We have stated in our decisions construing St. 1956, c. 665, § 11, that the purpose of the requirement for the filing of a bond is to discourage frivolous and vexatious appeals from decisions of the Boston

board of appeal to the Superior Court "but not . . . unreasonably to prohibit . . . meritorious appeals." *Damaskos* v. *Board of Appeal of Boston, supra,* at 64. See *Begley* v. *Board of Appeal of Boston,* 349 Mass. 458, 460 (decided under predecessor statute) ; *McNeely* v. *Board of Appeal of Boston,* 358 Mass. 94, 110. We have said that when "there has been a judicial determination of the case in the form of a final decree in the Superior Court" "the legislative purpose is fully achieved." For this reason, "after the entry of the final decree, [the Superior Court judge] was without power to . . . [increase the bond] under St. 1956, c. 665, § 11." *McNeely* v. *Board of Appeal of Boston, supra,* 110.

In the instant case, a bond in the amount of $50,000 was ordered under § 11, and subsequently, after our *Damaskos* decision, the bond was reduced to $5,000. Upon considering the factors delineated in the *Damaskos* case, *supra,* at 351–352, the trial judge presumably determined that $5,000 was sufficient surety for the purpose of § 11. Once the judge had held a full hearing and made his findings and rulings, the case was ripe for the entry of a final decree on the merits. In these circumstances, the legislative purpose of the bond requirement in § 11 had been accomplished as a practical matter, and in view of our holding in the *McNeely* case, *supra,* we conclude that it was legal error to require that the plaintiffs post an increased bond as a condition for the entry of the final decree, or in the alternative, have their bill dismissed without a final decree on the merits. To conclude otherwise would be to exalt form over substance and would result, in effect, in a nullification of the rule which we laid down in the *McNeely* case. The plaintiffs clearly were entitled to have a final decree entered on the merits in the Superior Court.

Our holding, however, should not be construed as conferring on an appellant from a final decree in the Superior Court in a zoning case an absolute right to appeal to this court without filing a surety bond. Appeals to this court under St. 1956, c. 665, § 11 (cf. G. L. c. 40A, § 21),

are subject to the same statutory rules as apply in other equity proceedings. See G. L. c. 214, §§ 19–28. In appropriate circumstances after the entry of a final decree, a justice of the Superior Court or of this court under G. L. c. 214, § 22, may order, pending appeal, that a surety bond be filed by the appellant in an amount which is sufficient to protect the interests of the appellee and is otherwise appropriate. See *Eastern Inv. & Dev. Corp.* v. *Franks*, 339 Mass. 280, 292–293; Reed, Equity Pleading & Practice, § 1077 (Supp. 1970). For an enumeration of factors which we require to be considered in fixing the amount of a surety bond, see *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 64–65.

Having concluded as we do, there is no occasion to apply the principles of the *Damaskos* decision with reference to the bond ordered in the instant case. Without regard to the *Damaskos* decision for reasons stated above, the order for a decree dismissing the plaintiffs' bills was error and we must reverse the final decree entered pursuant to such order. Inasmuch as the trial judge's order for a decree was in the alternative, and the parties have fully argued the merits of the case, we deem it appropriate to consider and decide the case on its merits.

2. We will consider the possible decree sustaining the decisions of the board, the entry of which was ordered by the judge in the event that a bond in the sum of $100,000 was filed. This final decree was based on the judge's ultimate findings that "each of the statutory conditions [of St. 1956, c. 665, § 9] [2] . . . [has] been established, and that the action of the [b]oard of [a]ppeal did not exceed its authority." The judge made complete and adequate

---

[2] Section 9 provides, in part, that the "board of appeal may authorize with respect to a particular parcel of land . . . a variance from the terms of such zoning regulation where, owing to conditions especially affecting such parcel or such building, but not affecting generally the zoning district in which it is located, a literal enforcement . . . of such zoning regulation would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulation, but not otherwise." Cf. G. L. c. 40A, § 15.

subsidiary findings. All the evidence before the judge is before us, including, as exhibits, photographs of the locus and the decisions of the board. In these circumstances, "all questions of law, fact, and discretion are open for review by us and we can make findings in addition to those made by the trial judge, but we do not disturb his findings of fact unless they appear to be plainly wrong." *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 334.

The plaintiffs contend that the two prerequisites essential to the granting of a variance have not been established. First, they maintain: "There are no conditions especially affecting the locus, but not affecting generally the zoning district in which it is situated, which would make the literal enforcement of the provisions of the [Boston] Zoning Code a hardship upon the locus or the . . . Faulkner Hospital." The judge's findings on this point, however, were that the land area of the hospital was an irregularly shaped parcel, that it contained variations in grade, extreme in some locations, and that subsoil borings revealed "ledge refusal" in some areas. He also found that the environs were not comparable to the locus with regard to the extremity of variations of grade nor was there comparable land in size or topography in the environs. Owing to these factors, he concluded that "any proposal to utilize the locus as a subdivision for residential housing would be economically unfeasible," and furthermore, that unless the requested variances were granted, because of the existing hospital's functional obsolescence, the Faulkner would suffer extinction as a nonprofit community hospital serving the entire Jamaica Plain section of Boston as well as the immediate environs. Second, the plaintiffs maintain that granting of the variances is "a substantial detriment to the public good and substantially derogates from the intent and purpose of the Boston Zoning Code." On this point, the judge found that the erection of a modern hospital on the locus could not conceivably constitute a "substantial detriment to the public good," that the variances would have "no adverse

or deleterious effect" on property values, and that the proposed new buildings would not result in the clogging of streets in the neighborhood. The findings of the board, which the judge upon review accepted as accurate, were to the same effect on both points.

We are of opinion that the judge's findings "were not wrong, much less plainly wrong." *Rodenstein* v. *Board of Appeal of Boston, supra,* at 336. See *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 552; *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 136. We have considered the evidence in the record before us, and we believe that the following additional factors support the conclusions reached in the Superior Court. The new hospital will face Centre Street, a major highway (U. S. Route 1) with ten other nonconforming uses fronting upon it,[3] whereas the present hospital structures, to be demolished, are at the rear of the locus adjacent to the main residence area in the zoning district. Also, the location of the new hospital off Centre Street, and of the garage off Whitcomb Avenue, will have the tendency of shifting traffic patterns away from the main residence area. Also, the demolition of the old buildings, together with the erection of the parking garage, will eliminate scattered outdoor parking areas and will improve the appearance of the entire locus. The locus at present is not congested, and the new structures will not substantially alter the ratio of buildings to open spaces. Furthermore, the judge had the benefit of a view of the locus, and was therefore in a favorable position to assess the impact of the Faulkner hospital compound on the neigh-

---

[3] These are the Franciscan Monastery of St. Clare, 920 Centre Street; Adams Nervine Hospital, 990 Centre Street; Home for Italian Children; 1125 Centre Street; Trinity Lutheran Church, 1195 Centre Street; Hebrew Rehabilitation Home for Aged, 1200 Centre Street; Norwegian Old Peoples Home, 1205 Centre Street; Sophia Snow House 1215 Centre Street; gasoline station, 1225 Centre Street; Recuperative Center, 1245 Centre Street; gasoline station, 1251 Centre Street. Just off Centre Street on Whitcomb Avenue is another building of the Home for Italian Children. The Faulkner Hospital at 1153 Centre Street is thus located in the midst of other nonconforming uses, including several other health facilities.

borhood. See *Kairis* v. *Board of Appeal of Cambridge*, 337 Mass. 528, 531; *Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 551.

We have repeatedly stated that "[n]o person has a legal right to a variance and they are to be granted sparingly." *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 61, and cited cases. The reviewing court, however, will of course sustain the granting of a variance if there are factors present satisfying the statutory prerequisites. In the instant case, we are satisfied that there was sufficient evidence to warrant the judge in sustaining the board's decisions.[4] Furthermore, we note that the purpose of the Boston zoning code as stated in St. 1956, c. 665, § 2, is to promote "the health, safety, convenience, morals or welfare of . . . [Boston's] inhabitants." Cf. G. L. c. 40A, § 2. In this case, where the variances sought will permit the continued existence of a nonprofit, community hospital which provides essential health services to an entire section of Boston, we believe that the purposes in the statute are clearly advanced. The fears of neighbors as to property values and traffic congestion, where the evidence is conflicting on these points, cannot override the health needs of the larger community. The hospital and its facilities have existed and actually have been expanded under a nonconforming use for over half a century. We believe that the present changes will not substantially alter either the nature or the scope of the use. See *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 337.

3. The final decree dismissing the plaintiffs' bills is reversed. The case is remanded to the Superior Court for the entry of a final decree that the decisions of the board were within its jurisdiction, that no modification of its

---

[4] However, while we agree with the judge that the board acted within its authority, we cannot say that the appeals from its decisions in this case were "frivolous and vexatious." *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 64, citing *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458, 460, and *McNeely* v. *Board of Appeal of Boston*, 358 Mass. 94, 110.

decisions is required, and that the clerk of court, within thirty days of the entry of the decree, send an attested copy thereof to the board of appeal of Boston.

*So ordered.*