ORA F. KIRKWOOD & others[1] vs. BOARD OF APPEALS
OF ROCKPORT & another.[2]

Essex.  December 15, 1983. — January 24, 1984.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

Zoning, Variance, Judicial review.

A municipal zoning board of appeals exceeded its authority in granting a
   variance for the construction of a four-unit condominium on certain
   oceanfront property located in a single residence zone, where the con-
   ditions affecting the locus, including rocky ledge, were characteristic
   of other property in the zoning district and where the construction of a
   single family residence on the locus was economically feasible. [428-
   432]
The record in a zoning case did not support the contention that certain
   remarks made by the judge indicated that the judge was biased. [432]


CIVIL ACTION commenced in the Superior Court Depart-
ment on August 28, 1980.

The case was heard by Bennett, J.

Robert J. Muldoon, Jr. (Paul R. Gupta & Peter J. Cahill
with him) for John C. Wrightson.

David E. Babson for the plaintiffs.

GREANEY, J.  This is an appeal by John Wrightson from a
judgment of the Superior Court annulling a decision of the
board of appeals of Rockport granting him a use variance
from the zoning by-law to construct a four-unit condominium
in a single residence district.  We affirm the judgment.

The pertinent facts and proceedings may be summarized
as follows.  On December 28, 1979, Wrightson purchased a

---

[1] Elizabeth A. Wynkoop and Theodore A. Scharfenstein. All the plain-
tiffs are residents of Rockport.  The plaintiff Kirkwood owns real estate
abutting the property which is the subject of this lawsuit.  The standing of
the plaintiffs to challenge the grant of the variance has not been questioned.

[2] John C. Wrightson.

parcel of vacant land in a single residence district of Rockport ostensibly to build a single family house. This district is the town's most severely restricted zone and permits of right single family dwellings, and certain limited religious, educational, and professional uses. The land in question consists of a ledge of rock containing approximately 43,000 square feet which forms a promontory which is surrounded by the Atlantic Ocean or sand on three sides. Sometime around the turn of the century a large mansion was built on the lot. By the time Rockport adopted zoning in 1951, the mansion had become an inn, first known as "The Beaches" and later as "The Sandpiper," which had guest units and a restaurant. "The Sandpiper" was destroyed by fire in 1976 or 1977, and all that remains on the lot are its stone foundation and a large underground septic system.

Shortly after purchasing the property, Wrightson investigated the cost of constructing a single family residence and apparently determined that such a residence was not financially feasible. The principal cost in Wrightson's calculations appears to have been the expense of building an elaborate sea wall, estimated at $150,000, to protect any building on the site from the force of the elements and the ocean. He then decided that the property would be better suited for a condominium consisting of eight units and began planning that project. Later, on the suggestion of area residents, Wrightson reduced the size of his proposed condominium project from eight units to four units.

On May 30, 1980, Wrightson applied for a variance from the town's zoning by-law to permit construction of a four-unit condominium in the single residence zone.[3] On August

---

[3] The board had considered zoning relief for the site on other occasions. Variances for the construction of a two-story inn of twenty rooms and an owner's apartment had been granted after a petition by a previous owner in 1978, but had lapsed when construction was not commenced in a timely manner pursuant to the approvals. A petition for an extension of time to build the inn was subsequently denied. In 1980, an application by Wrightson for a special permit to restore a nonconforming use (the inn) in an altered form (namely, the proposed four unit condominium) was denied. As to the propriety of denying the latter request, see *McLaughlin* v. *Rockland Zoning Bd. of Appeals*, 351 Mass. 678, 683 (1967); *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 631 (1974).

12, 1980, the board, by a vote of four to one, granted the variance, subject to certain conditions not material here. In giving its approval, the board made the findings required by G. L. c. 40A, § 10, and stated specifically that Wrightson would suffer substantial hardship due to circumstances which especially affected his land but did not affect the zoning district in general.[4] Thereafter, the plaintiffs appealed the grant of the variance to the Superior Court. A trial de novo was conducted which lasted five days. The trial judge heard extensive lay and expert testimony, received numerous exhibits, and took two views of the locus (one by land and one by sea) and the residential district of which it is a part. After considering the evidence, the judge made findings of fact which were diametrically opposed to those made by the board. The judge found: (1) that the oceanfront area in which the locus is situated is substantially confined to single

---

[4] The board made the following findings relative to the hardship element:

"Petitioner did submit additional evidence of hardship, and the four-person majority of the [b]oard now finds three elements of hardship, each of which standing alone would be substantial, and each of which arises directly from circumstances relating to the soil conditions, shape and topography of petitioner's land which do not affect the zoning district generally. (a) There is now one subsurface disposal system on petitioner's property which is only a few years old and, in the opinion of the [b]oard of [h]ealth, is more than adequate to service four dwelling units. However, a building may not use a septic system on another parcel, the property will not be sewered within the foreseeable future, and it would be impracticable if not impossible to establish another leaching field so as to subdivide the property. This situation constitutes a legal hardship which justifies petitioner's consolidating into one building all dwelling units which are to be allowed. (b) To be secure against the potential "force and fury of the Atlantic Ocean," any building on petitioner's property will require numerous special features, including direct pinning of the foundation to rock, reinforcement of all connections against lateral loads and extraordinary roof connections, special siding and roofing materials, extra insulation, protected or special glass and unusual precautions against leakage. These added factors will increase the cost of construction by between twenty-five and forty-five per cent. (c) No building on petitioner's property will be safe without a new seawall, which is estimated to cost at least $150,000."

residences and includes a number of "substantial" houses near the ocean; (2) that there also exist in the district a small number of widely separated nonconforming uses established prior to 1951; (3) that the locus as a building site is not unique but shares the advantages and disadvantages of other ocean-front property in the approximately two-mile single residence district; (4) that with the exception of one seawall protecting a cesspool on the locus, there was no visible decomposition of any other seawall; (5) that "construction of a single family residence on the site will not be cheap, but obviously can be made less expensive by placing the construction as far back from the edge of the ocean as the locus will permit, viz., a distance of about ninety feet"; (6) that it would not be necessary to protect a single family residence so placed on the lot with an extravagant series of newly constructed or reconstructed seawalls; and (7) that the "remarkable septic system" presently on the locus could easily serve a single family residence. Based on the findings the judge concluded that the locus was not unique in the district, that literal enforcement of the terms of the by-law would not produce substantial hardship, and that the construction of a four-family condominium upon the site would "undermine the existing by-law upon which many owners obviously have relied in purchasing single family residences on the waterfront."

Wrightson argues that the board was warranted in granting him a use variance to build his condominium project, that the judge applied an incorrect legal standard in reviewing the board's decision, and that the judge's critical findings of fact lack support in the record.

1. Before coming to grips with the trial record, it is useful to restate some general principles governing review of decisions of local zoning boards granting variances.

On an appeal to the Superior Court, the judge is required to hear the matter de novo and to determine the legal validity of the board's decision to grant a variance *upon the facts found by the judge.* G. L. c. 40A, § 17. *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972). *Garvey* v.

*Board of Appeals of Amherst,* 9 Mass. App. Ct. 856 (1980).
Since review is de novo, the judge is not restricted to the evidence which was introduced before the board, see *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953), and the board's decision carries no evidentiary weight on appeal.[5] *Devine* v. *Zoning Bd. of Appeals of Lynn,* 332 Mass. 319, 321 (1955). *Josephs* v. *Board of Appeals of Brookline, supra.*

General Laws c. 40A, § 10, as amended by St. 1977, c. 829, § 4B, authorizes a board of appeals to grant a variance only where it "specifically finds [a] that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, [b] a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and [c] that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law." See *Warren* v. *Board of Appeals of Amherst,* 383 Mass. 1, 9 (1981).

"No person has a legal right to a variance and they are to be granted sparingly." *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 61 (1971), and cases cited. At the hearing in the Superior Court the burden is upon the person seeking a variance, and the board granting one, to produce evidence that each of the discrete statutory prerequisites has been met and that the variance is justified. *Warren* v. *Board of Appeals of Amherst, supra* at 10. *Knott* v. *Zoning Bd. of Appeals of Natick,* 11 Mass. App. Ct. 1002, 1004 (1981). The trial judge, like the board of appeals, may uphold the variance only if it can be expressly found that the statutory prerequisites have been met. *Josephs* v. *Board of Appeals of*

_____

[5] Wrightson's argument that the board's decision carries evidentiary weight at the de novo hearing is controlled by the *Devine* and *Josephs* cases. There is nothing to the contrary in *Cavanaugh* v. *DiFlumera,* 9 Mass. App. Ct. 396, 402 (1980).

*Brookline,* 362 Mass. at 292. Since the requirements for the grant of a variance are conjunctive, not disjunctive, a failure to establish any one of them is fatal. See *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450 (1956).

2. Much of the evidence at trial was directed to the questions whether the locus was unique and whether it was encumbered by special hardship sufficient to justify relief by way of a use variance. We shall likewise concentrate on these two elements of the test, doing so from the familiar perspective that the trial judge's findings of fact on the statutory elements must stand unless they are determined to be clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477, 478 (1972). *Cavanaugh* v. *DiFlumera,* 9 Mass. App. Ct. 396, 397 (1980).

There are a little over two miles of ocean frontage in the residence district in which the locus is situated. Ledge (hard rock), similar to that at the locus, comprises frontage of many houses on the waterfront. Most of the dwellings near the water incur similar exposure to the force of the elements and the ocean. Moreover, there is some other property in the district with topography generally like that of the locus. The only characteristic which really distinguishes Wrightson's land is that it extends further into the ocean than the other waterfront property. The fact that inland property in the zoning district is not precisely identical to the locus in topography or shape is not controlling, however, since "a condition need not affect all property in a district in order to be regarded as a condition generally affecting the district as a whole." *Planning Bd. of Watertown* v. *Board of Appeals of Watertown,* 5 Mass. App. Ct. 833, 834 (1977). See also *Shacka* v. *Board of Appeals of Chelmsford,* 341 Mass. 593, 595 (1961).

At Wrightson's urging we have examined the exhibits in the case to see if they contravene the judge's disposition of the uniqueness question. This evidence does not clearly contradict the judge's finding that the land is not unique.

Nor does it plainly undermine the judge's observations, drawn in some part from two views, see *Keeney* v. *Ciborowski,* 304 Mass. 371, 372-373 (1939); *Wnuk* v. *Chemawa Country Golf, Inc.,* 2 Mass. App. Ct. 872 (1974), of the character of the zoning district as a whole.[6] We cannot say that the judge erred in finding that the circumstances of Wrightson's land were characteristic of the zoning district generally.

We also cannot say that the judge plainly erred in concluding that Wrightson has not shown that he would suffer substantial hardship as a consequence of literal enforcement of the provisions of the by-law. Wrightson correctly points out that statutory hardship is usually present when a landowner cannot reasonably make use of his property for the purposes, or in the manner, allowed by the zoning ordinance. See *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 336-337 (1958); *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 551-552 (1962); *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135-136 (1968); *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478 (1972). Such a predicament could have been made out in this case by Wrightson's showing that utilization of his land for a single family residence would be economically unfeasible. The judge was warranted, however, in finding that Wrightson's proof did not establish hardship.

First, Wrightson did not assert that a single family residence could not be constructed on the site. His architect testified that a single family dwelling could be built on the land. In addition, Wrightson admitted that other owners on the considerable expanse of waterfront property encom-

---

[6] These observations include the following: "The inspection of the shoreline from the vessel showed the existence of numerous substantial houses built within or approximately at 100 feet from high water mark and protected, to whatever extent, in some cases by ledge similar to that at the locus, in others by sea walls rising from the beach or ledge to such a number and extent that the Court finds that wisely or unwisely, the locus as a building site in this single residential district is not by any means unique, but shares the advantages and liabilities of an ocean waterfront ledge site with several other properties in the district."

passed by the district would also have to take into considera-
tion the wind, rain, snow, and force of the ocean in con-
structing and maintaining their properties. There was also
expert testimony that nature's elements affected the entire
shorefront area equally, and that houses built on the water
required the same kind of special features (such as addition-
al anchoring, bracing, and the use of more substantial
building materials), to make them energy efficient and im-
pervious to the force of the sea and wind. Thus, the cost of
any special features needed to fortify any building on
Wrightson's lot could have been found to be common to the
houses and buildings along the entire oceanfront and was
not a hardship especially appurtenant to the locus. See *Cass
v. Board of Appeal of Fall River*, 2 Mass. App. Ct. 555, 559
(1974). We also note that Wrightson's expert estimated that
the cost of the special features needed to secure the house
would exceed usual building costs by fifteen to twenty per-
cent, a cost range substantially less than the twenty-five to
forty-five percent estimate relied upon by the board.

Second, the judge found that it would not be necessary to
construct a $150,000 seawall to protect the locus. This ex-
pense was the single most determinative factor in Wright-
son's hypothesis that construction of a single family residence
was unsound as an economic matter. Under the hypothesis,
the seawall was essential to protect the proposed condomin-
ium which was to be placed quite close to the ocean to afford
its occupants a more attractive view. The judge found,
however, based in part on competent expert testimony, that
a single family residence could feasibly be constructed to the
rear of the lot approximately ninety feet from the ocean.
There was further expert testimony that a house so placed
on the lot would be far less subject to the destructive force of
the elements and the ocean. Consequently, it could be
found that there was no need for the construction of the
elaborate system of seawalls which was proposed to protect
the condominium project.[7] We also note (as did the judge

_____

[7] This conclusion is further supported by the judge's view taken at sea.
The judge noted that certain small islands near the locus and a shoal run-

expressly) that the original structure on the locus survived for almost eighty years, until claimed by fire, without any "extravagant" series of walls. These considerations justify the judge's conclusion that a house could be built and maintained on the land without the considerable expense of a protective seawall.

Finally, the judge found that the large septic system on the locus, built to serve the inn previously on the property and its restaurant, was in working condition and could serve a single family residence. Wrightson claims, however, that his site qualifies under the by-law for the possible construction of two single family houses[8] but that he is precluded from subdividing the property, and hence gaining maximum benefit from it, because the State Sanitary Code forbids tying two single family dwellings to the same septic system. He further asserts that it would not be possible to install another septic system because of the topography of his property. This argument is not persuasive.

The fact that a governmental regulation may deprive an owner of the most beneficial use of his property does not create a hardship if a single family residence, conforming to the requirements of the regulation, can be constructed on the property. Cf. *Moskow* v. *Commissioner of Environmental Management*, 384 Mass. 530, 533 (1981). Nor will the deprivation of a potential economic advantage to a landowner qualify as substantial hardship. *Shacka* v. *Board of Appeals of Chelmsford*, 341 Mass. at 594-595. *Bruzzese* v. *Board of Appeals of Hingham*, 343 Mass. 421, 424 (1962). Cf. *Planning Bd. of Barnstable* v. *Board of Appeals of Barnstable*, 358 Mass. 824 (1971). Moreover, it would have been premature and speculative for the trial judge to have found that Wrightson would suffer substantial hardship on this

ning roughly from one of the islands to a point at or near the shore "serve to some degree as a breakwater of natural origin, giving some protection to the mainland to the west in the event of winds and storms from the northeast and the east."

[8] The nearly one acre area of this lot would, if subdivided, make two building lots sufficient under the 20,000 square foot area minimum required in the zone for building lots.

score in the absence of evidence that he had ever undertaken to subdivide the property into two building lots.

We are satisfied that the judge applied correct legal criteria in passing on the board's decision. Despite the board's conscientious effort at curing what might have been perceived as a frustrating lack of use of prime land, the judge could have fairly concluded that the differences between the locus and surrounding oceanfront land did not render the locus singular for purposes of the extraordinary zoning relief sought. Upon conflicting evidence, the judge was also justified (and not clearly erroneous) in deciding that statutory hardship had not been shown because the construction of a single family dwelling on the property was economically feasible. The landowner's failure to carry the burden on these issues renders consideration of the remaining statutory requirements unnecessary.

3. As his final contention, Wrightson makes a weak assertion that the judge was biased, or determined to apply the wrong legal standard, because he made the following statement prior to the commencement of trial: "Before we start, let me make this observation. I want you to know I have my eye on this particular problem. It is perfectly plain to me, because I have been brought up in the neighborhood of extravagant residences, that it is physically possible, and it is financially possible to maintain a single residence on this tract of land." There is no merit to the argument.

It is of considerable significance that Wrightson's trial counsel made no objection to the now criticized remarks and in fact stated that he agreed with the statement. Moreover, the comment appears generally directed at the fact that a sizeable single family residence had been built and maintained on the site in the past. We do not think the remarks were meant to reflect a bias on the central issue in the case. After review of the record, we think the judge's conclusion was warranted and that Wrightson received a fair, complete, and thoughtful trial from an experienced judge.

*Judgment affirmed.*