DEMETRIOS DAMASKOS & others *vs.* BOARD OF APPEAL OF
BOSTON & another.

Suffolk.    February 1, 1971. — March 16, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Equity Pleading and Practice,* Bond, Zoning appeal, Judicial discretion.
*Zoning,* Variance.

Discussion of bonds which may be required as a condition of judicial or
    other action.    [58–60]
Discussion of the public interest in permitting persons aggrieved by a
    decision of a zoning board of appeals granting a variance or an excep-
    tion to obtain a court review thereof in order to ensure that the board
    conformed with the statutory restrictions upon the exercise of its
    powers.    [61–62]
The bond requirement of St. 1956, c. 665, § 11, vests wide discretion in
    the Superior Court in setting the penal sum of the bond, which should
    be exercised in a manner to discourage frivolous and vexatious appeals
    to it from zoning decisions of the board of appeal of Boston but not
    unreasonably to prohibit meritorious appeals from allegedly illegal
    board action.    [63–64]
Where it appeared, in a suit in equity in the Superior Court by way of
    appeal from a decision of the board of appeal of Boston granting a
    variance permitting the construction of a large apartment house, that
    an interlocutory decree was entered under St. 1956, c. 665, § 11, re-
    quiring the plaintiffs to file a bond of $50,000, that upon their failure
    to do so a final decree was entered dismissing the bill, and that the
    decision of the board did not contain findings adequate to justify the
    granting of a variance under § 9 and as written was arbitrary and
    capricious, this court reversed the interlocutory decree and the final
    decree and ordered the case remanded to the Superior Court for fur-
    ther proceedings, including a careful investigation under equitable
    principles as to whether a meritorious review of the board's decision
    would be precluded by a new interlocutory decree requiring the plain-
    tiffs to file a substantial bond.    [64–65]

BILL IN EQUITY filed in the Superior Court on May 20,
1969.

A motion for filing of a bond was heard by *Rose, J.* A final decree was entered by *Sullivan, J.*

*Thomas G. Shapiro (William P. Homans, Jr.,* with him) for the plaintiffs.

*James F. Sullivan & George A. Goldstein,* for the Conway Realty Trust, submitted a brief.

CUTTER, J. The plaintiffs, residents of Boston, by their bill in equity sought review under St. 1956, c. 665, § 11, of a decision of the board of appeal of Boston granting to Conway Realty Trust (Trust) a variance from the Boston zoning ordinance for a twenty-four unit apartment house on a parcel of land of 36,099 square feet (the locus), in a general residence district in the area where the plaintiffs reside. The "minimum lot size should be two acres." Trust, also a defendant, filed its answer and a motion that the plaintiffs be required to file a bond under c. 665, § 11.[1] The motion was allowed in the Superior Court on January 21, 1970. Bond was set in the amount of $50,000. No bond had been filed by March 31, 1970. Thereupon, on Trust's motion, a final decree dismissing the bill was entered. The plaintiffs appealed.

1. The plaintiffs contend that the provision in § 11, requiring a bond, imposes an unreasonable, unconstitutional limitation upon "open and equal access to the courts." See *North Carolina* v. *Pearce,* 395 U. S. 711, 724 (appellate criminal review, once established, "must be kept free of unreasoned distinctions"). They raise novel questions, largely of first impression in Massachusetts, not dealt with in the

---

[1] Statute 1956, c. 665, § 11, reads (in part): "Any person aggrieved by a decision of said board of appeal . . . may appeal to the superior court sitting in equity for the county of Suffolk . . . within fifteen days after such decision is recorded. Every person so appealing *shall file a bond with sufficient surety,* to be approved by the court, *for such a sum as shall be fixed by the court, to indemnify and save harmless* the person or persons in whose favor the decision was rendered *from all damages and costs which he or they may sustain in case the decision . . . is affirmed.* Upon an appeal under this section, the court shall hear all pertinent evidence and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. . . ." (emphasis supplied).

two earlier decisions concerning § 11.[2]  See *Begley* v. *Board of Appeal of Boston,* 349 Mass. 458, 460, where it was held (with a dissent by one judge based on the amount of the bond) only that § 11 did not deny the equal protection of the laws by requiring a bond only in zoning appeals to the Superior Court from the zoning board of Boston, without (see G. L. c. 40A, § 21) making a similar provision applicable to comparable appeals from zoning boards of appeal in other communities.  In upholding § 11 against this contention, this court placed reliance upon the principle (see *Thompson* v. *Chelsea,* 358 Mass. 1, 8) that the Commonwealth's largest city may reasonably be made the subject of special legislation not applicable to other communities in the State. See also *McNeely* v. *Board of Appeal of Boston,* 358 Mass. 94, 108–110, where this court said (at page 110) that the "legislative purpose, among others, was to discourage frivolous and vexatious appeals from the decisions of the Boston board, a condition which might not be found in comparable degree in other counties."

The present question arises from the provision that each person appealing from a decision of the board shall file a surety bond sufficient to indemnify the person prevailing before the board "from all damages and costs which" the prevailing party "may sustain in case the [board's] decision . . . is affirmed."  As was pointed out in the *Begley* case (349 Mass. 458, 459, 461, where a $15,000 bond was required), under § 11, it seems to have been assumed that the statute permitted the court to require a bond in an amount securing any substantive loss incurred by the prevailing party before the board and not merely any court costs. In the present case, the bond was set at $50,000.[3]  The plaintiffs, if they had provided the bond (as a condition of

---

[2] Section 11, already quoted (fn. 1) is part of the currently effective special zoning enabling statute, applicable only to Boston, which superseded St. 1924, c. 488, as amended.  The provision for a comprehensive appeal bond, now found in § 11, first appeared in St. 1941, c. 373, § 18, which made a very full revision of St. 1924, c. 488, § 19.  See 1941 House Bill 1174.

[3] In another case decided this day, *Playboy of Boston, Inc.* v. *Board of Appeal of Boston, post,* p. 66, the bond was set at $3,000,000.  In the *McNeely* case, *supra,* a $25,000 bond was filed.

having the legality of this local zoning board's decision
tested judicially), would have undertaken not only to pay
any necessary premium (probably a large sum) for the bond,
but also to pay (within the penal sum) any loss to Trust, if
the board's decision should be affirmed. The heavy finan-
cial risk of an appeal is plainly a substantial, if not pro-
hibitive, deterrent to questioning the board's decision, even
if that decision reasonably may appear to the owner of land
adjacent to that owned by the successful party to be arbi-
trary, capricious, and grossly illegal. The appealing owner
may not have the resources either to obtain the necessary
bond or to pay (or assume the risk of having to pay) the
losses to the appellee in the event of an affirmance. The
provision in § 11 for a bond securing "from all damages,"
literally interpreted, results in far more than mere dis-
couragement of frivolous or vexatious appeals. It may con-
stitute, for all but very wealthy aggrieved persons, a de
facto denial of highly meritorious appeals.

Provisions for a bond, as a condition of judicial or other
action, are not unusual. See e.g. G. L. (Ter. Ed.) c. 224,
§ 21 (discharge of debtor from imprisonment on supple-
mentary process); c. 231, §§ 98, 104 (as amended through
St. 1965, c. 377 — $100 bond on removal of District Court
actions to Superior Court); c. 239, § 5 (as amended through
St. 1969, c. 366 — appeal bond of defendant in summary
process for the possession of real estate, which may be
waived by court order); [4] c. 246, §§ 1 (as amended through
St. 1961, c. 158) 31, 66 (bonds in trustee process); c. 247,
§§ 2, 8 (replevin); c. 250, §§ 17 (bond in petition to vacate
judgment), 24 and 25 (writ of review). In some jurisdic-
tions, statutes require security for litigation and some other
expenses before certain class proceedings, such as minority
stockholders' suits, may be pressed. See McKinney's N. Y.
Bus. Corp. Law, § 627 (as amended Law of N. Y. 1965,

---

[4] See *Megliola* v. *Municipal Court of West Roxbury Dist.* 299 Mass. 325, 328,
concerning this section, where the bond covers "damage and loss sustained
by the plaintiff by reason of the withholding of the demanded premises and
by reason of any injury done thereto during . . . such withholding." Before
such a bond may be required, there must be, of course, one judicial hearing.

c. 803, § 23); Henn, Corporations (2d ed.), § 372. Such statutes have been upheld as valid under the Fourteenth Amendment. See *Cohen* v. *Beneficial Ind. Loan Corp.* 337 U. S. 541, 550–553. See also *Phelps* v. *Burnham*, 327 F. 2d 812, 813 (2d Cir.); *Marks* v. *Seeaman*, 309 F. Supp. 332, 333–334 (S.D. N.Y.); *Roach* v. *Franchises Intl. Inc.* 32 App. Div. 2d (N. Y.) 247, 249–253.

Bonds also may be required, under usual equity principles, in connection with granting or dissolving injunctions and possibly other equitable relief, as matter of judicial discretion. See *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 211; *Thayer Co.* v. *Binnall*, 326 Mass. 467, 480; *Yakus* v. *United States*, 321 U. S. 414, 440. See also *Eastern Inv. & Dev. Corp.* v. *Franks*, 339 Mass. 280, 292–293. That such a requirement of security is discretionary is indicated by cases under Rule 65 (c) of the Federal Rules of Civil Procedure.[5] Despite the seemingly absolute mandate of the rule, it has been interpreted as discretionary, in part because of the italicized words (fn. 5), and in part by application of general principles of judicial discretion in granting equitable relief. See *Urbain* v. *Knapp Bros. Mfg. Co.* 217 F. 2d 810, 815–816 (6th Cir.), cert. den. 349 U. S. 930; *Continental Oil Co.* v. *Frontier Ref. Co.* 338 F. 2d 780, 781–783 (10th Cir.). See also *Russell* v. *Farley*, 105 U. S. 433, 446; *Brotherhood of Locomotive Engrs.* v. *Missouri-Kans.-Tex. R.R.* 363 U. S. 528, 533–534.

It should be noticed that, in almost all the examples, noted above, of a statute or rule requiring a party to provide security, the provision falls within one or more of the following groups: (a) it does not require substantial security; (b) there has been a prior judicial (and not merely an administrative) proceeding, and the security is a condition of relief on appeal, or of vacating a court order; or (c) modification of the requirement is possible, to some extent, as a

---

[5] That rule reads in part, "No . . . preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper,* for the payment of such costs and damages as may be incurred or suffered by any party . . . wrongfully enjoined" (emphasis supplied).

matter of judicial discretion; or (d) it is a condition of garnishment or other attachment. Access to a court for the first time is usually unlimited, except for replevin, statutory attachments, and statutes such as those in some other States relating to a shareholders' derivative or class action, where a bond is required (usually subject to an exception that the bond requirement shall not apply if holders of a stated minimum percentage of the shares join in the action) to prevent unreasonable, frivolous, or vexatious proceedings harmful to the corporation and the greater part of its shareholders.

2. We consider St. 1956, c. 665, § 11, in the light of the somewhat comparable requirements just mentioned. The zoning jurisdiction of Boston's board of appeal includes appeals under c. 665, §§ 8, 9, (a) from the refusal of a building or other permit under that chapter, or (b) from any order or decision of the building commissioner or other administrative official in violation of that chapter or any regulation thereunder. On appeals to the board, it may grant or withhold exceptions under § 10 (cf. G. L. c. 40A, § 4, as amended) and variances under § 9 (cf. c. 40A, § 15, as amended). We are concerned here with a review of a variance which the board has granted from zoning provisions applicable to the affected land which would have precluded Trust's proposed development in the absence of the variance.

The granting of variances is subject to as strict requirements under the Boston zoning statute (St. 1956, c. 665, § 9) [6] as under G. L. c. 40A, § 15. Comparable decisions have been rendered under the two statutes. See e.g. *Real Properties, Inc.* v. *Board of Appeal of Boston,* 319 Mass. 180,

---

[6] Section 9 provides that the "board of appeal may authorize with respect to a particular parcel of land . . . a variance from the terms of such zoning regulation where, owing to conditions especially affecting such parcel . . . but not affecting generally the zoning district in which it is located, a literal enforcement . . . of such zoning regulation would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulation, but not otherwise. In authorizing such variance, said board may impose limitations both of time and of user, and a continuation of the use permitted may be conditioned upon compliance with regulations to be made and amended from time to time thereafter."

184–185; *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 678–680; *Hurley* v. *Kolligian,* 333 Mass. 170, 172–174; *Abbott* v. *Appleton Nursing Home, Inc.* 355 Mass. 217, 220–223. Cf. *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 336–337. No person has a legal right to a variance and they are to be granted sparingly. *DiRico* v. *Board of Appeals of Quincy,* 341 Mass. 607, 610–611. *Rose* v. *Board of Appeals of Wrentham,* 352 Mass. 301, 303. *Bottomley* v. *Board of Appeals of Yarmouth,* 354 Mass. 474, 476–477. Cf. *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555–556. Because of the rigid restrictions imposed by the Legislature upon boards of appeal (including that of Boston) with respect to granting variances, there is strong reason for careful scrutiny of any statutory provision (such as § 11) for a bond which, if literally applied, might have the practical effect of barring from the courts owners of property adjacent to a parcel concerning which a variance has been granted. A legislative intention to provide a prohibitive obstruction (by requiring a security bond) to the bringing of meritorious suits to set aside variances allegedly arbitrarily, capriciously, or illegally granted by the Boston board of appeals [7] is not lightly to be inferred.

Zoning ordinances, by-laws, and regulations adopted under G. L. c. 40A are designed (see § 3) "to lessen congestion in the streets; to conserve health; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city or town; and to preserve and increase its amenities." In St. 1956, c. 665, § 2, this same concept is expressed more briefly, viz. to promote "the

---

[7] See note, 82 Harv. L. Rev. 668, 671–676. Similar doubts might exist with respect to some amendments of the Boston zoning regulations. See *McHugh* v. *Board of Zoning Adjustment of Boston,* 336 Mass. 682, 686–691. Cf. note, 4 Col. J. Law & Soc. Probs. 120.

health, safety, convenience, morals, or welfare of . . . [Boston's] inhabitants." To accomplish these purposes zoning provisions must (G. L. c. 40A, § 2, and St. 1956, c. 665, § 2) "be uniform for each class or kind of buildings, structures, or land, and for each class or kind of use, throughout the district." If variances (or exceptions, unless bestowed fairly in accordance with ascertainable standards properly stated in the zoning provisions) are granted with undue frequency or liberality, and without strict compliance with the prescribed statutory criteria, zoning regulations can become a matter of administrative whim. The intended uniformity of rule may be destroyed. There is thus an important public, as well as private, interest in permitting court review at the behest of aggrieved persons to ensure that local boards of appeal conform with the statutory restrictions upon granting variances.

3. The plaintiffs' attack upon the bond provisions of § 11 rests largely upon allegedly unconstitutional denial of access to the courts (to set aside a variance) on a discriminatory basis, in effect limited and measured by the wealth and resources of the persons objecting. The plaintiffs ask us to hold entirely invalid so much of § 11 as seems to require a bond to be given as a condition of testing in the courts the validity of a variance. Access to the courts, they argue, should not be based on the financial ability of an aggrieved person to pay bond premiums and to assume the risk of paying damages to the recipient of a variance in the event of an unsuccessful appeal.

Decisions setting aside (as constitutionally invalid) restrictions upon use of the courts, based upon the ability of a party to pay, have occurred principally in criminal cases. See e.g. *Griffin* v. *Illinois*, 351 U. S. 12, 16–20; *Douglas* v. *California*, 372 U. S. 353, 354–358; *Draper* v. *Washington*, 372 U. S. 487, 496–500; *Rinaldi* v. *Yeager*, 384 U. S. 305, 307–311. See also *North Carolina* v. *Pearce*, 395 U. S. 711, 723–726 (imposition of more severe sentence at second trial as deterrent to appeal). It is argued that something like this principle should be applied to civil cases

with respect to financial obstacles preventing or obstructing access to the courts. The principle has been applied to protect the fundamental rights of some indigents in civil cases. See e.g. *Coonce* v. *Coonce*, 356 Mass. 690, 693–695 (proceedings in forma pauperis in divorce); *Boddie* v. *Connecticut*, 401 U. S. 371, 376–379; *Morganti* v. *Morganti*, 99 Cal. App. 2d 512, 515–516 (statute unconstitutionally denied divorce to the spouse of an incurably insane person, unless the plaintiff could prove ability to support the insane person); *Harrington* v. *Harrington*, 269 Atl. 2d (Maine) 310, 314–316 (statutory bond in repossession proceedings); *Jeffreys* v. *Jeffreys*, 58 Misc. 2d (N.Y.) 1045, 1048–1059 (costs in divorce proceedings). Cf. *State* v. *Sanks*, 225 Ga. 88, 90 (indigent required to furnish bond as condition of presenting defense to eviction),[8] app. dism. 401 U. S. 144, 153.

We need not and do not consider whether the cases just cited, concerning court expenses of indigents in civil cases, would all be followed in Massachusetts, or whether they would be extended to cover aggrieved persons, even if not indigent, who are precluded from taking a zoning appeal under § 11 by lack of the resources needed to incur the heavy expense and serious risks of a bond. We conclude, in any event, that § 11 should be interpreted in a manner which will avoid various constitutional questions suggested by these authorities. See *Opinion of the Justices*, 341 Mass. 760, 785; *Commonwealth* v. *Buckley*, 354 Mass. 508, 512. We hold that the bond requirements of § 11 are to be interpreted in somewhat the same manner as the similar provisions of Rule 65 (c) of the Federal Rules of Civil Procedure (fn. 5, *supra*). See *Urbain* v. *Knapp Bros. Mfg. Co.* 217 F. 2d 810, 815–816 (6th Cir.) cert. den. 349 U. S. 930, where it was said that Rule 65 (c) of the Federal Rules of Civil Procedure "leaves it to the . . . [j]udge to order the giving of

[8] Other authorities, generally discussing the problem of access to the courts in civil matters, include *Ex parte Young*, 209 U. S. 123, 147–148, and *Truax* v. *Corrigan*, 257 U. S. 312, 334–335. See *United Mine Wkrs. of Am. Dist. 12* v. *Illinois State Bar Assn.* 389 U. S. 217, 221–222; *McDonald* v. *Board of Election Commrs. of Chicago*, 394 U. S. 802, 807; *Brown* v. *Chastain*, 416 F. 2d 1012, 1026–1028 (5th Cir., Rives, J. dissenting); *Lee* v. *Habib*, 424 F. 2d 891, 898–905 (Ct. App. D.C.).

security *in such sum as the court considers proper.* This would indicate plainly that the matter of requiring security in each case rests in the discretion of the . . . [j]udge." *Continental Oil Co.* v. *Frontier Ref. Co.* 338 F. 2d 780, 782 (10th Cir. — "Under this rule [65 (c)] the trial judge has wide discretion . . . ."). The words of § 11 ("a bond with sufficient surety, to be approved by the court, for such a sum as shall be fixed by the court," comparable to the language of the Federal rule), also reasonably may be read as discretionary. The discretion should be exercised in a manner to accomplish the purpose of § 11, as described in the *Begley* case, 349 Mass. 458, 460, and the *McNeely* case, 358 Mass. 94, 110, viz. — (a) "to discourage frivolous and vexatious appeals from the decisions of the Boston board" of appeal, but not (b) unreasonably to prohibit, directly or indirectly (by requiring too large a bond), meritorious appeals (see *General Motors Corp., Petr.* 344 Mass. 481, 482) from allegedly illegal variances.[9] So interpreting § 11, and applying usual equitable principles to the requirement of a bond, frivolous appeals (or appeals by an aggrieved person not seriously harmed by the variance) may be discouraged by a decree [10] ordering a bond with a penal sum sufficient to protect the grantee of the variance fully. On the other hand, where an aggrieved person may be seriously harmed and has a meritorious case, the bond requirement may be so applied as to avoid obstructing proper appeals.

4. In the present case, the record reveals little about the circumstances in which a bond of $50,000 was required. Those circumstances must be reconsidered upon further hearing in the Superior Court in accordance with the princi-

---

[9] This, in a meritorious case, might mean only a moderate penal sum for an aggrieved neighboring property owner of modest resources unable to assume major risks to protect his legitimate interests. Of course, all aspects of the case and of the respective interests of the parties, appropriate for the consideration of a court of equity in granting or denying discretionary relief, may be taken into account, after such preliminary hearing as seems proper in the particular case. In some cases, setting of a moderate bond and advancement of an appeal for speedy hearing on the merits may be appropriate, with a suitable adjustment of the bond after hearing.

[10] Such an interlocutory decree, we assume, would be subject to review under G. L. c. 214, § 22.

ples stated in this opinion. We do note that the decision of the board of appeal contains no adequate findings of either subsidiary or ultimate facts to justify the granting of a variance under St. 1956, c. 665, § 9. There is, for example, no suggestion of any facts showing "conditions especially affecting . . . [the locus], but not affecting generally the zoning district in which it is located" which would make literal enforcement of the zoning regulation "involve substantial hardship to the" owner of the locus. See fn. 6. Also no facts found by the board (as opposed to very general conclusions) would permit the conclusion that "desirable relief may be granted without substantial detriment to the public good and without . . . substantially derogating from the intent and purpose of . . . [the applicable] zoning regulation." Unless there is substantial expansion of the board's decision, nothing in the decision will indicate that the grant of the variance (cutting the required lot size by more than one half) is not arbitrary and capricious. Before requiring by a new decree any substantial bond, equitable principles necessitate a careful investigation whether a meritorious review will not thereby be precluded unjustly.

5. The requirement that the plaintiffs give the $50,000 bond, and the plaintiffs' failure to do so, directly affected the final decree. See G. L. (Ter. Ed.) c. 214, § 27. Cf. *McNeely* v. *Board of Appeal of Boston,* 358 Mass. 94, 110. Questions with respect to the interlocutory decree requiring the bond thus are open on appeal from the final decree.

6. The interlocutory decree fixing the amount of the bond and the final decree are reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*