van Gestel, J.
This matter comes before the Court on the motion of the defendants Thomas Zazzara and Frederick Mannix (hereafter “the developers”) to require the plaintiffs (hereafter “the appellants”) to post a bond before proceeding further with this case.
The underlying matter is an appeal from a decision by the Boston Board of Appeal (“the Board”) granting certain variances to the developers from certain sections of the Boston Zoning Code (“the Code”). The project in issue is the proposed construction of a 10-story office building on what is now an open-air parking lot at 155 Portland Street, Boston. The site is located in the Bulfinch Triangle District, an area near North Station. (Art. 46, Boston Zoning Code.)
The appellants are abutters to an abutter of the site. They own a five-stoiy office building on Portland Street, with a 95-seat capacity restaurant on the first floor.
Although they raise technical issues in objection to the variances granted, an examination of the appellants’ complaint makes clear that their greatest individual concern is “the removal of an existing pay parking lot that has been available for public use including the . . . [appellants’) tenants and their customers and visitors in an already commercially dense area . . ,” Complaint paras. 17 and 18. The appellants have no legal right, however, to compel the developers to continue to operate a parking lot on their site. And, significantly, Section 46-10 of the Code provides that “[wjithin the Bulfinch Triangle District, off-street parking facilities are not required in any Proposed Project." The Bulfinch Triangle is in a Restricted Parking Zone, whereby the provision of parking is discouraged in order to encourage the use of public transportation.
The technical concerns articulated by the appellants in their complaint — principally relating to the height of the proposed building and its aesthetics — are issues that are not special in their effect on the appellants or different from the concerns of the rest of the community.[1] Thus, serious questions exist as to the appellants’ standing as aggrieved parties. See, e.g., Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 132-33 (1992).
Section 11 of the Code, as amended in 1994, provides that in the event of an appeal from a decision of the Board:
The court may in its discretion require the . . . persons so appealing to file a bond with sufficient surety, for such sum as shall be fixed by the court, to indemnify and save harmless the . . . persons in whose favor the decision was rendered from damages and costs which . . . they may sustain in case the decision of the board is affirmed, . . .
In Damaskos v. Board of Appeal of Boston, 359 Mass. 55 (1971), the Supreme Judicial Court construed and found appropriate such a bond requirement in an earlier version of the Code. Damaskos directs a court when assessing a motion for a bond to exercise a balancing of equities similar to that required when considering a request for security in support of a preliminary injunction under Rule 56. Id. at 64. The harm to the developers by a frivolous appeal must be weighed against the harm to an aggrieved person with a meritorious appeal.
The apparent weaknesses in the appellants’ appeal are noted above. They have no right to force continued use of the site as a parking lot, and their standing is questionable on the remaining issues.
The harm to the developers by delay in the construction of a project that has run a difficult approval course and come out with essentially unanimous reg-ulatoiy approval is significant. Credible affidavits by Mr. Mannix and by a representative of Meredith & Grew, a respected real estate firm, enable the Court to fairly estimate the loss of monthly net income (rental income less operating expenses, taxes and debt service) for a twelve-month period to be $616,656. Legal fees and related costs to litigate this appeal can be expected to run from $35,000 to $50,000. And there will certainly be other losses, costs and damages, the estimated amounts of which have not been presented to the Court.
The appellants, pointing to a proviso in Sec. 11 of the Code, argue that any bond should not exceed $25,000 because “the project for which such variance . . . was granted involves the construction ... of less than fifty thousand square feet of space.” In making *74 this argument, the appellants point to the developers’ statement that the gross floor area of the project “is 49,422 square feet.” It was this latter number that enabled the developers to have their project considered under the “Small Project Review” procedures provided in Art. 80, Sec. 80E of the Code.
But “gross floor area,” as defined in Art. 2A of the Code, specifically excludes “basement and cellar areas devoted exclusively to uses accessory to the operation of the structure and . . . areas elsewhere in the structure devoted to housing mechanical equipment . . . such as heating and air conditioning equipment, plumbing [and] electrical equipment.” The developers’ project clearly has more that 578 square feet of space devoted exclusively to space other than defined “gross floor area.” Consequently, the $25,000 bond cap has no application here.
ORDER
Exercising its discretion, after considering and balancing the equities as dictated by Damaskos, this Court grants the motion to compel the filing of a bond and, pursuant to Sec. 11 of the Boston Zoning Code, orders the plaintiffs to file a bond, with sufficient surety, in the amount of $666,656. Said bond is to be filed on or before April 30, 1999.

 It is worthy of note that the project is strongly supported by the Boston Redevelopment Authority, the Mayor’s Office, the local business association and others in the immediate neighborhood. The appellants are the sole opponents.