Henry, Bruce R., J.

INTRODUCTION

This action for zoning review arises out of the decision by the Board of Zoning Appeals for the Town of Milford (“Milford BZA” or “BZA”) to grant a variance to allow construction of a single-family residence on property currently owned by Karamark Realty Trust, of which David R. Consigli (“Consigli”) is Trustee. The remaining defendants are members of the Milford BZA. The plaintiffs are all abutters of the subject property. The plaintiffs seek review of the Milford BZA’s decision under G.L.c. 40A, §17. Both the plaintiffs and defendants have filed motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the following reasons both motions for summary judgment are DENIED.

BACKGROUND

The relevant and undisputed facts of this case are as follows. Two adjacent property lots, with a combined total area of 20,014 square feet, were purchased by a married couple in 1961, at which time the zoning by-laws did not have a minimum square footage requirement for buildable lots. The lots were part of a subdivision plan that had been drawn up and approved in 1958. The owners built a home on the larger lot (11,051 sq.ft.) and saved the other lot for future use. The zoning regulations changed in 1966, and required a minimum of 15,000 square feet for building residences. Because the change in the zoning by-laws rendered the vacant lot too small to be built upon, the two lots were deemed to have merged into one.
After the death of the original owners, the executrix of their estate petitioned the Milford BZA to issue a variance which would allow the property to be re-divided into two lots and permit building on the vacant lot. On December 9, 2004, the BZA granted the requested variance. The result was a vacant lot comprised of 8,963 square feet that was approximately eighty-nine feet in width. The instant lawsuit was filed shortly thereafter, on December 21,2004. On June 23, 2005, Consigli and Karamark Realty Trust purchased the vacant lot from the executrix. On December 21, 2005, the parties filed an assented to motion to substitute Consigli in the place of the executrix, who was one of the original named defendants in this case. The motion was allowed on December 28, 2005.
In support of their motion, the defendants offer the affidavits of Town Engineer Michael Santora (“Santora”) and Real Estate Appraiser Stephen Tosehes (“Tosehes”). Santora attests that the construction of a home on the subject property will not significantly affect the neighborhood traffic. Santora also attests that the traffic on Ferguson Street — the street fronting the subject property and at least one of *82 the abutters’ properties — is “extremely light” (Santora Affidavit, ¶4), and that a new residence will increase traffic by an average of ten trips per day (Santora Affidavit, ¶5). Tosehes attests that, in his professional opinion, construction of a single-family home on the subject property would not have any adverse effect on the value of the abutting properties.
The plaintiffs offer in opposition to the defendants’ motion the affidavit of Real Estate Broker Jerry Bluhm (“Bluhm”) and the deposition testimony of Mark D. Laird. Bluhm attests that prospective purchasers often “consider such factors as density of construction [in the neighborhood], proximity of homes and structures, and other factors affecting privacy when making decisions on the purchase of real estate.” (Bluhm Affidavit, ¶3.) Bluhm concludes that it is his professional opinion that the proposed construction will place the plaintiffs at a competitive disadvantage and will adversely affect the value of their property. (Bluhm Affidavit, ¶5.) Mark D. Laird also testified in deposition that when he and his wife purchased their home, it was valued lower than other lots in the development because it was adjacent to other, smaller lots. (Deposition of Mark D. Laird, August 31, 2005, Volume I; p. 18,11. 1-10.)
The plaintiffs object to the variance and proposed construction because the plot does not conform with the zoning regulations for that neighborhood, and, the plaintiffs argue, the proposed construction will cause deleterious effects to the area, including increased traffic congestion and decrease in the value of the plaintiffs’ properties. In addition, the plaintiffs argue that any hardship that would result if the variance is not allowed is self-imposed. The defendants argue that the plaintiffs are not “persons aggrieved” and have no standing to bring this action. The Court conducted a non-evidentiaiy hearing on both motions for summary judgment on April 3, 2006.

DISCUSSION

Standard of Review

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Com. 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The Court is required to view the evidence in a light most favorable to the non-moving party. Foley v. Matulewitz, 17 Mass.App.Ct. 1004, 1005 (1984).

Plaintiffs’ Standing

“Any person aggrieved by a decision of the board of [zoning] appeals . . . may appeal to . . . the superior court. . . The complaint shall allege that the decision exceeds the authority of the board . . . and shall contain a prayer that the decision be annulled.” G.L.c. 40A, § 17. A plaintiff is a “person aggrieved” if he suffers some infringement of his legal rights. Circle Lounge & Grille, Inc. v. Bd. of Appeal of Boston, 324 Mass. 427, 430 (1949). The term “person aggrieved” should not be read narrowly. Marotta v. Bd. of Appeals of Revere, 336 Mass. 199, 204 (1957). Abutters generally enjoy a rebuttable presumption that they are “person[s] aggrieved.” Id. at 204.
The plaintiffs, as abutters, have presumptive standing to bring this appeal. The defendants, therefore, must produce evidence “warranting a finding contrary to the presumed fact.” Standerwick v. Zoning Bd. of Appeals of Andover, 64 Mass.App.Ct. 337, 342 (2005), quoting Watros v. Greater Lynn Mental Health & Retardation Association, 421 Mass. 106, 111 (1995). “But first, of course, the plaintiff must articulate a basis for standing that is legally cognizable.” Standerwick, supra at 341. Diminution in property values, see id., and increased traffic, see Circle Lounge & Grille, supra at 430, are legally protected interests and serve as a valid basis for standing. If the defendant successfully challenges the presumption of standing, the burden shifts to the plaintiffs to provide credible evidence to substantiate their allegations. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996).
The defendants challenge the plaintiffs’ presumed standing through the affidavits of Santora and Tosehes. Santora’s affidavit is not particularly helpful as he does not define what he means by the term “extremely light.” He uses the phrase to characterize the current flow of traffic on Ferguson Street; if he means fifty or one hundred car trips per day, then ten more on average may have little impact indeed; but if “extremely light” means only five or even ten car trips per day, then an added ten car trips on average may have a more substantial impact on the traffic flow in the neighborhood. As to the claimed reduction in real estate values, the defendants make a sufficient showing to warrant a finding contrary to the presumed fact by providing an affidavit from an experienced real estate assessor who states that it is his opinion that the proposed construction will not adversely affect the value of the plaintiffs’ property. However, the plaintiffs have adequately supported their burden by countering with an affidavit from another real estate professional, stating that proximity of nearby structures and neighborhood density are often of concern to prospective buyers and that his opinion is that the proposed *83 construction will adversely affect the value of the plaintiffs’ property. This is “credible evidence to substantiate [the plaintiffs’] allegations.” Marashlian, 421 Mass. at 721. Thus, the plaintiffs have standing to appeal the Milford BZA’s decision. The Defendants’ Motion For Summary Judgment, therefore, must be DENIED.

Defendants’ Hardship

There is no legal right to a variance. Damaskos v. Bd. of Appeal of Boston, 359 Mass. 55, 61 (1971). “The burden rests upon the person seeking a variance and the board ordering a variance to produce evidence at the hearing in the Superior Court that the statutory prerequisites have been met and that the variance is justified.” Dion v. Board of Appeals of Waltham, 344 Mass. 547, 555-56 (1962). A finding of substantial hardship relating to the premises for which the variance is sought is necessary to the granting of a variance, and the failure to make such a finding is fatal to the application. See McCabe v. Zoning Bd. of Appeals of Arlington, 10 Mass.App.Ct. 934, 934 (1980), citing Spaulding v. Bd. of Appeals of Leicester, 334 Mass. 688, 692 (1956). However, if the hardship is self-imposed, it cannot justfy the granting of a variance.
There is conflicting case law about whether the scenario in the present case involves a self-imposed hardship. In Raia v. Bd. of Appeals of North Reading, the Appeals Court refused to uphold a variance allowed by the zoning board and Superior Court in similar circumstances, finding that the hardship that befell the owner without the variance was self-imposed. 4 Mass.App.Ct. 318, 322 (1976). There, two adjoining lots had been purchased by a married couple, who improved only on one lot, and at the time of purchase both lots conformed with all applicable zoning regulations. Id. at 319. The zoning by-laws subsequently changed, rendering the unimproved lot unbuildable.[4] Id. A third party purchased the vacant lot, obtained a building permit, and began constructing the foundation. Id. The permit was subsequently revoked; the owner applied for a variance and was granted one. Id. The zoning board concluded, and the Superior Court agreed, that the lot would be useless if the owner was not allowed to build a home upon it, that a great deal of money had already been spent on the foundation, that the owner would incur further expense to move the foundation, and that these factors combined to create a substantial hardship. Id. at 319-20.
The Appeals Court, however, overturned the variance. It ruled instead that the owner had acted “in contravention of the applicable zoning ordinance” in starting to lay the foundation, and that neither that contravening act nor the financial loss incurred was sufficient to justify the grant of a variance. Raia, 4 Mass.App.Ct. at 321-22. The Appeals Court further stated that the finding that the lot would be useless unless a single-family residence could be built upon it was in error because:
At the time when the zoning by-law changed . . . both parcels were under common ownership and comprised a single lot [that conformed with the new by-laws and] which contained a single residence. The division of that property into two nonconforming lots did not create a substantial hardship especially affecting the vacant lot, even though the latter could not be built upon, as it could have remained part of a conforming lot.
Id. (citations omitted).
By contrast, in Crosby v. Bd. of Appeals of Weston, the Appeals Court upheld a variance in similar circumstances. 3 Mass.App.Ct. 713, 713 (1975). In Crosby, the trial judge found that the subject property did not conform to lot width requirements and was the only remaining lot in a subdivision without a dwelling upon it and for that reason “literal enforcement of the Zoning By-law will probably result in complete non-use of the parcel.” Id. (citations omitted.) The trial judge further found that at the time the original plan was laid out, it complied with all applicable zoning regulations. Id. The Appeals Court found that “[t]he hardship did not arise from ‘changes and commitments made by the ... [defendant] after purchasing the land with a zoning law limitation on its use ...’ Nor did the defendant act in circumvention of the zoning by-law.” Id., citing Cary v. Bd. of Appeals of Worcester, 340 Mass. 748, 750 (1960).
The facts of the case at bar are similar to those in Raia in that the subject property is one merged lot with a residence thereon which conforms with all zoning requirements and which was sought to be divided into two non-conforming lots and to allow a residence to be built upon the vacant lot. In Raia, it was the original owners who divided the merged lot by selling off the vacant lot to a third party, but it was the third-party owner who sought the variance. In this case, it was the executrix who sought the variance, presumably standing in the shoes of the deceased original owners as the executrix of their estate, and the third party purchased the property only after the Milford BZA had granted the variance to re-divide the land and allow a residence to be built thereon.
The instant facts also echo those in the Crosby case, because the hardship did not arise from any changes or commitments made by the owners after purchasing the property with a zoning law limitation on its use, as the variance had already been granted at the time Consigli bought the subject property. In addition, neither Consigli nor the executrix committed any act in circumvention of the zoning regulations. Therefore, the assertion that the defendant’s claimed hardship was self-imposed is not supported by the facts before me at this time. Summary judgment for the plaintiff, therefore, is not appropriate.

*84
ORDER

For the foregoing reasons, both the Defendants’ Motion For Summary Judgment and the Plaintiffs’ Motion For Summary Judgment are DENIED.

The lot no longer conformed with the minimum frontage requirements.