NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13526

WILLIAM SHOUCAIR & another[1]  vs.  BOARD OF APPEAL OF BOSTON
& another.[2]


Suffolk.     April 1, 2024. - July 10, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Dewar, JJ.


Zoning, Appeal, Bond.  Practice, Civil, Appeal, Bond.  Bond.
    Statute, Construction.  Words, "Damages."



    Civil action commenced in the Superior Court Department on
January 10, 2023.

    A motion for an appeal bond was heard by Claudine A.
Cloutier, J.

    A proceeding for interlocutory review was heard in the
Appeals Court by Sookyoung Shin, J.  The Supreme Judicial Court
granted an application for direct appellate review.


    Sean T. Regan (Edmund A. Allcock also present) for William
Shoucair.
    Dennis E. McKenna for Pure Oasis LLC.
    Katherine Aubuchon-Jones, Assistant Corporation Counsel,
for board of appeal of Boston.

---

[1] Edward Shoucair.

[2] Pure Oasis LLC.

Michael J. McDermott & Abigail S. LaFontan, for NAIOP Massachusetts, Inc., & another, amici curiae, submitted a brief.
Kenneth Glidden, Linda Burnett, & Charles Vilnis, pro se, amici curiae, submitted brief.

DEWAR, J. This case concerns the standard for imposing a bond on an aggrieved party who wishes to appeal from a decision of the board of appeal of Boston (board). Section 11 of the Boston zoning enabling act (§ 11) gives a judge discretion to set a bond "to indemnify and save harmless the person or persons in whose favor the decision was rendered from damages and costs which he or they may sustain in case the decision of said board is affirmed." St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5. In Marengi v. 6 Forest Rd. LLC, 491 Mass. 19, 20-21 (2022), interpreting the separate bond provision applicable to zoning appeals in the rest of the Commonwealth, G. L. c. 40A, § 17, we held that a trial court could not order an appeal bond for "costs" unless the appeal appears to be "so devoid of merit as to support an ultimate determination of bad faith or malice." In this appeal, we are urged to hold that such a preliminary finding is likewise required before imposing a bond for damages under § 11 of the Boston zoning enabling act. We hold that no such preliminary finding is required under the distinct terms of that statute, which, unlike the statute for the rest of the Commonwealth, provides for a bond for "damages" not conditioned on a finding of bad faith or malice.

Reaffirming the standard for imposing such bonds under <u>Damaskos</u> v. <u>Board of Appeal of Boston</u>, 359 Mass. 55 (1971), we find no abuse of discretion by the judge below, who applied the <u>Damaskos</u> standard in ordering the bond here.[3]

1. <u>Background</u>. The defendant Pure Oasis LLC (Pure Oasis) applied for a conditional use permit to operate a recreational cannabis dispensary at a property on Washington Street in the Brighton section of Boston. The permit was denied by the building commissioner, and Pure Oasis appealed to the board. After a hearing, the board dismissed the appeal. Pure Oasis sought reconsideration, which the board allowed. A second hearing was held, but a decision was deferred to a later date. At a third hearing, the board approved the conditional use permit.

The plaintiff William Shoucair is an abutter to the property and opposed the conditional use permit before the board, contending that Pure Oasis did not meet the permit requirements under Boston's zoning code. Together with his brother Edward Shoucair, whose claims have since been dismissed, he claimed the dispensary would negatively affect the nature of the residential neighborhood, where children congregate, and

---

[3] We acknowledge the amicus briefs of NAIOP Massachusetts, Inc., and the Massachusetts Association of Realtors; and of Kenneth Glidden, Linda Burnett, and Charles Vilnis.

would adversely affect traffic and parking conditions in the area.

After the conditional use permit was approved, the Shoucairs filed a complaint in the Superior Court in Suffolk County, appealing from the board's decision under § 11. See St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5 (providing for appeals by "[a]ny person aggrieved by a decision of [the] board of appeal"). The complaint alleged that Pure Oasis failed to satisfy the conditional use permit requirements for the reasons the Shoucairs had unsuccessfully advanced before the board and also alleged that the board's procedures and ultimate decision were arbitrary and capricious.

Pure Oasis moved to require each plaintiff to post an appeal bond of $25,000 to "indemnify and save Pure Oasis from damages and costs which it will likely sustain" from the appeal under § 11. An affidavit from a Pure Oasis manager averred that, even if Pure Oasis prevailed in the case within approximately one year, its damages from the appeal would exceed the $50,000 requested. The estimated damages included at least $100,000 in lost profits; over $40,000 in fees to sustain the property (taxes, insurance, maintenance, and snow removal); and at least $50,000 in legal fees. The Shoucairs objected to the imposition of an appeal bond on the ground that their appeal was

not brought in bad faith or malice, citing this court's decision in Marengi, 491 Mass. at 20-21.

After a hearing, the judge allowed Pure Oasis's motion in part, ordering each plaintiff to post a bond of $3,500. While the judge did "not find that the plaintiffs' appeal [was] in bad faith," she disagreed that the standard set forth in Marengi applied under § 11 and instead applied the principles articulated by this court in Damaskos, 359 Mass. at 64. In ordering a smaller bond than Pure Oasis requested, the court reasoned that "the bond requirement is not intended to deter otherwise meritorious appeals" and also considered "the resources of the parties."

The Shoucairs filed a petition under G. L. c. 231, § 118, first par., seeking vacatur of the bond order. A single justice of the Appeals Court stayed the order and granted them leave to file an interlocutory appeal. A stipulation thereafter entered below, dismissing Edward Shoucair's claims. We granted William Shoucair's (Shoucair's) application for direct appellate review.

2. Discussion. Appeal bonds "are not unusual." Damaskos, 359 Mass. at 58. An appeal bond provides a means of "protect[ing] the interest of the appellee" during the pendency of an appeal. Broderick v. Board of Appeal of Boston, 361 Mass. 472, 476 (1972). This case concerns two different bond provisions for appeals from zoning decisions: § 11, covering

zoning decisions in Boston;[4] and G. L. c. 40A, § 17 (§ 17), covering zoning decisions in the rest of the Commonwealth.[5]

In Damaskos, 359 Mass. at 64, we explained that the purpose of § 11 in particular is to "discourage frivolous and vexatious appeals" while also not "unreasonably . . . prohibit[ing], directly or indirectly (by requiring too large a bond), meritorious appeals" (citation omitted). The statute gives judges discretion to set a bond amount that will effectuate this purpose. Id. Accordingly, for an appeal that appears frivolous, a judge may order a bond "sufficient to protect the

---

[4] The relevant bond provision of St. 1956, c. 665, § 11, first par., as amended through St. 1993, c. 461, § 5, states:

"The court may in its discretion require the person or persons so appealing to file a bond with sufficient surety, for such a sum as shall be fixed by the court, to indemnify and save harmless the person or persons in whose favor the decision was rendered from damages and costs which he or they may sustain in case the decision of said board is affirmed . . . ."

[5] The relevant bond provision of G. L. c. 40A, § 17, third par., states:

"The court, in its discretion, may require a plaintiff in an action under this section appealing a decision to approve a special permit, variance or site plan to post a surety or cash bond in an amount of not more than $50,000 to secure the payment of costs if the court finds that the harm to the defendant or to the public interest resulting from delays caused by the appeal outweighs the financial burden of the surety or cash bond on the plaintiffs. The court shall consider the relative merits of the appeal and the relative financial means of the plaintiff and the defendant."

grantee of the variance fully." Id. "On the other hand, where an aggrieved person may be seriously harmed and has a meritorious case, the bond requirement may be so applied as to avoid obstructing proper appeals." Id.

Shoucair argues that a bond cannot be ordered at all under § 11 unless the judge finds that the appeal is brought in bad faith or with malice, citing our decision in Marengi, 491 Mass. at 31. Marengi concerned the act governing zoning appeals in the rest of the Commonwealth, § 17. See Marengi, supra at 20. That statute allows a judge to set a bond "to secure the payment of costs." G. L. c. 40A, § 17, third par. Noting that the statute ultimately permits the award of costs against an unsuccessful appealing party only if the judge finds that the party "acted in bad faith or with malice in making the appeal," G. L. c. 40A, § 17, sixth par., and that the statute expressly instructs the judge to "consider the relative merits of the appeal," G. L. c. 40A, § 17, third par., we held that a judge cannot order a bond under this provision unless the judge makes a preliminary finding that "the appeal appears to be so devoid of merit as to allow the reasonable inference of bad faith or malice." Marengi, supra at 30. Shoucair notes that § 11 likewise permits an award of costs only upon a showing that the appeal was brought in bad faith or with malice, see St. 1956, c. 665, § 11, second par., as amended through St. 1993, c. 461,

§ 5, and so argues the same preliminary finding must be made here.

We disagree, because the two statutory provisions materially differ in their plain language. See Marengi, 491 Mass. at 24-25, quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001) ("statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result"). While § 17 authorizes a bond solely for recovery of "costs," G. L. c. 40A, § 17, third par., Boston's statute allows a judge to set a bond "to indemnify and save harmless the [defendant] from damages and costs" (emphasis added), St. 1956, c. 665, § 11, first par., as amended through St. 1993, c. 461, § 5. We highlighted this distinction in Marengi, supra at 33-34, noting that the Legislature chose not to include a bond for "damages" in § 17, unlike in § 11.[6] Moreover, § 11 does not condition an ultimate award of damages to a prevailing defendant on a finding of bad faith or malice by the plaintiff; that limitation applies

_____

[6] We have frequently acknowledged the "special legislative attention" afforded to Boston. See Begley v. Board of Appeal of Boston, 349 Mass. 458, 460 (1965) (noting, in interpreting earlier version of § 11, that it may reflect legislative judgment that "[because] the population of Boston is far greater than that of any other city or town in Massachusetts, the number of frivolous or vexatious appeals from the board of appeal of Boston would be considerably higher than" elsewhere).

solely to the award of "costs," see St. 1956, c. 665, § 11, second par., as amended through St. 1993, c. 461, § 5. Accordingly, a judge need not make a finding that the appeal appears to be so devoid of merit as to support an ultimate determination of bad faith or malice before fixing a bond for damages under § 11.[7]

Shoucair contends that, if no such predicate finding is required, plaintiffs of limited means with meritorious appeals will be denied their right of access to courts under art. 11 of the Massachusetts Declaration of Rights. We considered, and ultimately rejected, similar arguments in Damaskos, 359 Mass. at 62. There, we explained that § 11 could and should be interpreted to avoid any such constitutional concerns, through the statute's grant of discretion to judges in setting the appeal bond. Id. at 63-64. We instructed judges to balance "discourag[ing] frivolous and vexatious appeals" against "unreasonably . . . prohibit[ing] . . . meritorious appeals" (citation omitted). Id. at 64. This discretionary judgment

---

[7] Having so concluded, we do not reach the question whether § 11 requires such a preliminary finding to affix a bond solely for "costs," which, as under § 17, ultimately may be awarded against a plaintiff only upon finding bad faith or malice. The judge below distinguished the standard for setting a bond amount under § 17 and Marengi, 491 Mass. at 31, on the ground that § 11 distinctly authorizes a bond for "damages." And, as discussed infra, she did not abuse her discretion in setting the amount of the bond given the magnitude of the undisputed potential delay damages, even aside from any consideration of costs.

necessarily entails considering whether a bond is "too large" for a plaintiff to pursue a meritorious appeal. Id. "As long as the discretion is exercised without unreasonably prohibiting meritorious claims, no constitutional violation will exist." See Paro v. Longwood Hosp., 373 Mass. 645, 652-653 (1977) (considering constitutionality of different bond requirement). Article 11 thus does not demand a bad faith or malice requirement.

Nor do we agree with Shoucair's contention that an appeal bond for "damages" requires a defendant to allege an independent cause of action entitling the defendant to damages. In support, he cites case law and treatises defining "damages" by reference to the injury generally required to bring a cause of action. But § 11 does not limit "damages" to those that could be raised in an independent cause of action. Instead, it more broadly provides for a bond to "indemnify and save harmless" a defendant from damages the defendant "may sustain in case the [board's decision] is affirmed." St. 1956, c. 665, § 11, first par., as amended through St. 1993, c. 461, § 5. As we stated in Damaskos, 359 Mass. at 59, the bond is simply "security" for a party forced to await a successful resolution on appeal. See Broderick, 361 Mass. at 476 (appeal bond is to "protect the interest of the appellee" during pendency of appeal).

Accordingly, the judge did not abuse her discretion in

performing the balancing prescribed by Damaskos, 359 Mass. at 64. She duly made at least an initial assessment of the merits of the appeal -- stating that she did not find that it was brought in bad faith -- and considered the resources of each party in setting the bond at $3,500 per plaintiff. See id. Indeed, arguing only that the bond should not have been imposed at all in the absence of a preliminary finding of bad faith or malice, Shoucair does not argue that the judge abused her discretion in setting the specific bond amount.[8]

3. Conclusion. We hold that § 11 of the Boston zoning enabling act does not require a preliminary finding that an appeal is so devoid of merit as to support an ultimate finding of bad faith or malice before imposing a bond for damages. We reaffirm that a judge should exercise discretion in setting the bond so as "(a) to discourage frivolous and vexatious appeals

---

[8] We take this opportunity to note, however, that at least some of the "damages" claimed by Pure Oasis cannot properly be characterized as such under § 11. Pure Oasis's claimed losses in the form of annual property taxes, maintenance costs, and snow removal are all expenses it would be obliged to pay regardless of whether this appeal had been filed. These are not the sort of expenses courts have approved as "damages" under § 11. See, e.g., Jack v. Board of Appeal of Boston, 15 Mass. App. Ct. 311, 317 (1983) (increased costs of construction due to delay); Schlager v. Board of Appeal of Boston, 9 Mass. App. Ct. 72, 79 (1980) (lessor's loss of rents). By contrast, however, Pure Oasis's estimated $100,000 in lost profits for one year's delay -- an undisputed estimate based on its experience operating another cannabis dispensary in Boston -- is a delay damage appropriately considered in setting a § 11 bond.

. . . but not (b) unreasonably to prohibit, directly or indirectly (by requiring too large a bond), meritorious appeals" (quotation and citation omitted). Damaskos, 359 Mass. at 64. The judge having properly applied these principles here, we discern no abuse of discretion and affirm the court's order.

So ordered.