NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-974                                            Appeals Court

        ERIC PORTER  vs.  BOARD OF APPEAL OF BOSTON & another.[1]


                         No. 22-P-974.

      Suffolk.     September 11, 2023. – January 18, 2024.

             Present:  Milkey, Blake, & Sacks, JJ.


Zoning, Appeal, Board of appeals:  decision, Person aggrieved,
     Variance, Bond.  Surety.  Practice, Civil, Appeal, Bond,
     Zoning appeal, Standing, Attorney's fees.



     Civil action commenced in the Superior Court Department on
August 17, 2017.

     Following review by this court, 99 Mass. App. Ct. 1123
(2021), a motion for an order to pay fees from a surety bond was
heard by Maureen Mulligan, J.


     Eric Porter, pro se.
     Jose C. Centeio for Fung & Hsu Realty Associates, LLC.


     BLAKE, J.  Eric Porter filed a complaint in the Superior

Court challenging a decision of the Board of Appeal of Boston

(board) that granted variances to the defendant Fung & Hsu

_____

        [1] Fung & Hsu Realty Associates, LLC.

Realty Associates, LLC (Fung & Hsu).  The variances permitted

Fung & Hsu to construct an addition on a residential building in

the Allston section of Boston.  After a trial in the Superior

Court, the judge (trial judge) concluded that Porter lacked

standing and dismissed the complaint with prejudice.  After

Porter filed a notice of appeal (first appeal), Fung & Hsu filed

a motion to compel Porter to post a surety bond as a condition

thereof.  The trial judge allowed the motion and issued an order

requiring Porter to post a surety bond in the amount of $25,000

(bond order).

Porter applied for a bond through United Casualty and

Surety Insurance Company (bond company); thereafter, he posted

the bond[2] and prosecuted the first appeal.  In an unpublished

memorandum and order issued pursuant to our Rule 23.0, a panel

of this court affirmed the judgment.  See Porter v. Board of

Appeal of Boston, 99 Mass. App. Ct. 1123 (2021).[3]  In a footnote

rejecting Porter's challenge to the bond order, the panel noted

---

[2] The condition of the bond was "that if [Porter] shall
prosecute the case with effect and shall indemnify and save
harmless Fung and Hsu . . . in whose favor the [board] decision
was rendered, from damages and costs which he or they may
sustain in case the decision of said board is affirmed then this
obligation to be void; otherwise to remain in full force, power
and virtue."

[3] Porter's request for further appellate review was denied.
See Porter v. Board of Appeal of Boston, 488 Mass. 1102 (2021).

that "we see no abuse of discretion in the [trial] judge's allowance of the defendant's request for an appeal bond in the amount of $25,000." Id. However, the panel expressly declined to award the appellate attorney's fees and costs that Fung & Hsu had requested on the ground that Porter's appeal was frivolous. See id.

After the rescript issued, Fung & Hsu moved for an "order to pay . . . Fung & Hsu . . . from the surety bond" (motion). Fung & Hsu argued that because a panel of this court upheld the bond order, and Fung & Hsu successfully defended the first appeal, it was entitled to have the $25,000 from the bond disbursed to it. A different Superior Court judge (motion judge) allowed the motion. In her decision and order (disbursement order), the motion judge limited her role to "decid[ing] the amount of damages and losses flowing from the appeal" (quotation omitted). She then authorized the disbursement of the bond in the amount of $23,979.99, an amount representing the attorney's fees and costs that Fung & Hsu incurred in successfully defending the first appeal.[4] Porter timely appealed that order. For the reasons that follow, we vacate the disbursement order.

---

[4] Porter's motion to stay the disbursement order was denied by a single justice of this court.

Discussion. In addition to challenging the disbursement order, Porter appears to be claiming that the trial judge did not have the authority to enter the bond order.[5] Because Porter did not raise the issue whether the trial judge had the authority to enter the bond order in his opposition to the motion to disburse the bond, that claim is waived. See Imbrie v. Imbrie, 102 Mass. App. Ct. 557, 575-576 (2023). Moreover, the panel in the first appeal already concluded that issuance of the bond order was not an abuse of the trial judge's discretion. See Porter, 99 Mass. App. Ct. at 1123 n.3. Nonetheless, some discussion of the bond order is necessary as a framework to our analysis of the disbursement order.

1. Statutory authority for the bond order. In its motion, Fung & Hsu cited two statutes in support of its requested relief. The first is the Boston zoning enabling act, St. 1956, c. 665, § 11, as amended by St. 1993, c. 461, § 5 (§ 11). Section 11 provides, in part, that:

---

[5] Fung & Hsu contend that Porter lacked standing to appeal the disbursement order because the bond company paid the claim. We disagree. First, it appears uncontested that the bond company paid the funds to Fung & Hsu, and that Porter reimbursed the bond company. In addition, "[t]he scope of a surety's liability is determined by the intent of the parties." Wood v. Tuohy, 67 Mass. App. Ct. 335, 341 (2006). Here, the bond agreement required Porter to indemnify the bond company, and thus Porter can demonstrate the potential for injury sufficient to establish standing. See Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006). Cf. Mass. R. Civ. P. 65.1, as appearing in 483 Mass. 1401 (2019).

> "[a]ny person aggrieved by a decision of [the board] . . .
> may appeal to the superior court . . . .  The court may in
> its discretion require the person or persons so appealing
> to file a bond with sufficient surety, for such a sum as
> shall be fixed by the court, to indemnify and save harmless
> the person or persons in whose favor the decision was
> rendered from damages and costs which . . . they may
> sustain in case the decision of said board is affirmed"
> (emphasis added).

Notably, § 11 further provides that "costs shall not be allowed against the party appealing from the decision of the board unless it shall appear to the court that said party acted in bad faith or with malice in appealing to the court."  Because § 11 applies only to an appeal of the board's decision to the Superior Court, it does not by its terms govern here.  See Schlager v. Board of Appeal of Boston, 9 Mass. App. Ct. 72, 75 (1980).

We therefore turn to the alternative source of authority cited in Fung & Hsu's motion.  That authority, now appearing at G. L. c. 231, § 117 (§ 117),[6] authorizes a judge to enter interlocutory orders, such as orders requiring surety bonds, to protect parties' rights pending appeal.[7]  See Broderick v. Board

---

[6] Section 117 provides that "[a]fter an appeal has been taken from a final judgment of the superior court . . . until such order has been modified or annulled, the justice of the superior court by whom the final judgment appealed from was made, . . . may make any proper interlocutory orders, pending such appeal."

[7] The decision in Broderick cited G. L. c. 214, § 22, but that provision was replaced by G. L. c. 231, § 117, as appearing

of Appeal of Boston, 361 Mass. 472, 475-476 (1972) (citing predecessor of § 117). We construe the bond order entered here to be authorized pursuant to § 117 and conclude that the factors outlined in Damaskos v. Board of Appeal of Boston, 359 Mass. 55, 64-65 (1971), governing the setting of a bond under § 11, should be considered in setting a bond under § 117. These include consideration of the purpose of a bond, which is "(a) to discourage frivolous and vexatious appeals from the decisions of the Boston board of appeal, but not (b) unreasonably to prohibit, directly or indirectly (by requiring too large a bond), meritorious appeals from allegedly illegal variances" (quotation and citation omitted). Damaskos, supra at 64.[8] "Without a careful balancing of interests . . . [someone] with a meritorious appeal might be barred from bringing a claim if [that person] is without resources to pay for, and provide collateral for, a substantial bond." Feldman v. Board of Appeal of Boston, 29 Mass. App. Ct. 296, 298 (1990), citing Damaskos, supra at 58.

---

in St. 1973, c. 1114, § 202. See Schlager, 9 Mass. App. Ct. at 76 n.10. Our decision does not turn on this change.

[8] We observe that there is a pending appeal about whether the Damaskos standard has been changed by Marengi v. 6 Forest Rd. LLC, 491 Mass. 19 (2022). See Shoucair v. Pure Oasis, LLC, SJC-13526. However, that issue is not before us in this appeal.

2.  The bond.  The trial judge ruled that Porter lacked standing to challenge the board's grant of a variance, and that even if he had standing, his challenge to the board's decision on the merits would fail.  Some of the language that the trial judge used suggested that she did not see the case as a close call.  For example, she characterized some of Porter's "accusations" as "wild," and found the board's decision to be "clear and well-reasoned."  Without question, the trial judge had the discretion to order Porter to file a surety bond "in an amount which is sufficient to protect the interests of [Fung & Hsu] and is otherwise appropriate."  Schlager, 9 Mass. App. Ct. at 77.

In requesting a $25,000 bond, Fung & Hsu did not explain why a bond in that amount was justified.  Rather, it stated only that this was the maximum bond amount permitted by § 11 for a project of this size.  In turn, the trial judge offered no explanation of why she was entering the bond order or the reasons for the amount.  However, it seems evident that she believed that it was appropriate for Fung & Hsu to be provided security for the potential compensable damages and costs it faced in defending what the trial judge thought was a weak appeal.  Notably, however, the trial judge did not find in this case that Porter was a vexatious litigant or that his claims

were frivolous.  Such findings may bear on, among other things, the amount of the bond.  See Damaskos, 359 Mass. at 64.

The motion judge recognized that in requiring a litigant to post a bond, a judge must perform a balancing test of "inhibiting vexatious and frivolous appeals . . . with not unreasonably restraining meritorious appeals."  She asserted that "[this] analysis was already performed by the [trial] judge who decided to issue the bond and determined its amount."  On this record, it is not at all clear that the motion judge's observation was correct.  For example, there is nothing in the record to suggest that in ordering that the bond be posted, the trial judge considered Porter's ability to post the bond, whether the amount of the bond was necessary to protect Fung & Hsu's interests, and the potential that the requirement to post the bond would chill a nonfrivolous appeal.  See Schlager, 9 Mass. App. Ct. at 76-77.

Having concluded that the trial judge conducted the analysis set forth in Damaskos, the motion judge limited her consideration "to decid[ing] the amount of 'damages and losses flowing from the appeal.'"  In other words, the motion judge accepted Fung & Hsu's position that it was automatically entitled to disbursement of the bond if it prevailed in the

first appeal, and that the only question before her was the amount to be paid.[9]  This was error.

The purpose of an appeal bond is to provide security to the appellee for compensable damages and costs should it prevail in the appeal.  See N-Tek Constr. Servs., Inc. v. Hartford Fire Ins. Co., 89 Mass. App. Ct. 186, 191 (2016).  This begs the question what damages and costs are compensable in that event.  Although Fung & Hsu in part sought reimbursement for cost overruns it claimed had resulted from the first appeal, the motion judge rejected that claim, and Fung & Hsu has not argued that the judge erred in doing so.  Instead, the motion judge appears to have disbursed money from the bond based on the attorney's fees incurred by Fund & Hsu in defending the first appeal.  But whether a winning litigant is entitled to attorney's fees is governed by the so-called "American Rule."  John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009).  Under this rule, in the absence of a statute,

_____

[9] The motion judge observed in a footnote that there were three other zoning cases in which Porter was the plaintiff. These facts alone hardly established that Porter's claim here was frivolous or that he is a vexatious litigant.  Indeed, in one of the referenced cases, Porter was successful in obtaining reversal of the trial court judge's decision that he lacked standing.  See Porter v. Board of Appeal of Boston, 99 Mass. App. Ct. 240 (2021).  And that leaves aside that determining standing in a zoning appeal can be quite complex.  The motion judge simply labeled Porter a "habitual appealer of zoning decisions" without a concomitant analysis.  See Montgomery v. Selectmen of Nantucket, 95 Mass. App. Ct. 65, 71-72 (2019).

court rule, or case law, successful litigants are responsible for their own attorney's fees and expenses.  See Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 95 (1997).  The bond order served to provide Fung & Hsu a means to secure payment of its appellate attorney's fees, but it did not alter the framework for determining whether it was entitled to such fees.

Importantly, determining "whether an appeal is frivolous is left to the sound discretion of the appellate court" (citation omitted).  Dacey v. Burgess, 491 Mass. 311, 319 (2023).  Thus, whether Fung & Hsu was entitled to its attorney's fees in defending the earlier appeal was not an issue for the motion judge to consider.  In fact, Fung & Hsu asked this court for such fees in the first appeal, and a panel of this court declined that request.  That should have ended the matter to the extent that Fung & Hsu's request for disbursement of the bond was based on such fees.  Given that the motion judge rejected Fung & Hsu's only other basis for disbursing the bond (the claimed cost overruns), the disbursement order cannot stand.

Conclusion.  The order allowing the motion for an order to pay Fung & Hsu from the surety bond is vacated.  A new order shall enter requiring Fung & Hsu to pay to Porter the sum of $23,979.99 within thirty days.  Fung & Hsu's request for attorney's fees and costs incurred in the current appeal is denied.

<u>So ordered</u>.